## COPELIN v. MORRIS et.

Common Pleas Court, Cuyahoga County.

No. 604336.   Decided April 30, 1951.

194

David Perris, Cleveland, for plaintiff.

McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett, Hauxhurst, Inglis, Sharp & Cull, Thompson, Hine & Flory, Bolton, Taggert, Boer, Mierke & McClelland, Edward C. Stanton, Cleveland, for defendants.

## OPINION

By BLYTHIN, J.

Plaintiff Robert S. Copelin filed his petition herein against defendants Warren L. Morris individually and as Assignee for the benefit of creditors of The Vaness Company, a Delaware corporation, and against The Van Sweringen Company, an Ohio corporation, seeking a declaratory judgment, and relief on the basis of adjudication of his rights as declared. Plaintiff claims that said The Vaness Company in 1938 conveyed to said Warren L. Morris, Assignee as aforesaid, its interest in the parcel of land first hereinafter mentioned and that in January, 1940, defendant The Van Sweringen Company deeded to said Assignee the same parcel, and more land, and that by its deed The Van Sweringen Company purported to impose a restriction providing that the parcel was to be used solely for single, private family, residence purposes. The parcel of land is situated on the northwest corner of Kemper and Cormere Roads in the City of Cleveland as shown on a plat recorded in Volume 113 of Maps, Page 24 of Cuyahoga County Records. Plaintiff is now the owner of said parcel, having acquired title thereto by deed of the County Auditor of Cuyahoga County in or about May, 1949, pursuant to a sale of the parcel to him under the provisions of law authorizing forfeiture, certification ,and sale of lands for non payment of taxes. Taxes for the tax year of 1931, and years subsequent thereto, up to and including 1948 were unpaid at the date of sale to plaintiff and have never been paid excepting to the extent of the sum realized at the tax sale to plaintiff. Plaintiff states that The Van Sweringen Company became the owner

of said parcel in March, 1928, and that it executed a mortgage deed thereon and more land in favor of The Vaness Company in January, 1935, and that said mortgage deed provided, among other things, that the parcel now owned by plaintiff:

"Shall be used solely and exclusively for residence purposes of the apartment house type, meaning thereby buildings or structures designed for the separate use and occupany of 4 or more families and containing two or more suites of rooms on each floor, each of which suites shall be designed for the separate use and occupancy of one family only, * * *."

Said mortgage deed was cancelled by Warren L. Morris, Assignee as aforesaid, and such cancellation was recorded on January 13, 1940.

Plaintiff pleads the enactment of §5762 GC, effective August 11, 1943, and claims that by reason of its provisions, and the facts stated, he acquired by said Auditor's deed a new title to the parcel now owned by him, subject only to such easements and covenants running with the land as were created prior to the lien of the taxes (1931) which first became delinquent and which furnished the basis for forfeiture. Plaintiff claims that his parcel of land was not subject to any restrictions or covenants as of the date of the original tax delinquency and that by reason thereof and under the benefit of the provisions of §5762 GC, the parcel is still unrestricted and that he, plaintiff, desires to erect thereon an apartment house building, that defendants are asserting that said parcel is restricted to use for single private family dwelling purposes, and that he, the plaintiff, will be unable to finance his proposed apartment building unless and until there is a determination that said parcel is not restricted for a single dwelling as claimed by the defendants, and that failure to secure such a determination without undue delay will cause the plaintiff serious damage. Plaintiff seeks the declaration of the court on four questions stated as follows:

"1. Whether or not there is any easement, restriction, covenant running with the land or covenant forbidding the erection of an apartment building of the character permitted by the zoning ordinances of Cleveland, Ohio;

"2. Whether or not there exists upon said premises any easement, covenant running with the land, covenant or restriction limiting the use of said premises exclusively to single family private residence purposes;

"3. Whether or not any person or persons, company or companies have by virtue of any rights granted by said defendants or either of them, any easement, covenant running with the land, covenant or restriction of use whatever;

"4. What, if any, restrictions, easements, covenants run-

ning with the land or covenants there are upon said premises and the nature and details thereof.".

And prays for such relief as such declarations entitle him to have at the hands of this court.

Defendant The Van Sweringen Company filed its Answer asserting that it then had pending in the United States District Court for the Northern District of Ohio a proceeding for Reorganization under favor of Section 77 B of the Bankruptcy Act, and that said court had issued an order enjoining all parties from institution or prosecution of any suits against The Van Sweringen Company and that such order was still in effect. It later filed a Supplemental Answer setting forth the fact that the order of injunction issued by the Federal Court had then been relaxed to the extent of permitting the prosecution of this cause.

In its answer it further set forth a claim that the plaintiff's petition did not state a cause of action for a declaratory judgment.

It further alleged that the parcel of land described in the petition, together with other lands, were conveyed by it to one Paul H. Owen by deed dated October 13, 1920, and recorded in Volume 2479, Page 120 of Cuyahoga County Records of Deeds and that in said deed there appeared the following clauses:

1. Said real estate shall be used exclusively for private dwelling house purposes: and no such house shall be erected, placed or suffered to remain upon said premises, being less than two stories in height, nor the cost of construction of which shall be less than Eight Thousand and no/100 ($8,000.00) dollars; nor, within a period of ten years from the date hereof, unless the plans and specifications therefor shall have been approved in writing by the grantor herein; nor unless said dwelling shall be so planned and so placed upon said lot that the width of the front elevation thereof, which shall be toward said Kemper Road, shall be greater than the depth of said dwelling, except that if the entire available building space between the side lines of said lot be occupied by the front of said dwelling, the foregoing restrictions as to the depth of said dwelling shall not apply; nor shall such house be erected, placed or suffered to remain thereon within fifty (50) feet of said Kemper Road; nor within ten (10) feet of any adjoining lot; nor within fifty (50) feet of any other highway created by the subdivision of said premises as is provided for hereinafter; nor in case of such subdivision, within ten (10) feet of any adjoining lot erected by such subdivision. This restriction as to the distances at which buildings shall be placed

from the front and side lines of said premises, shall not apply to, nor include, porches, verandas, portes cochere, or other similar projections of such house; except that the same shall not be constructed or extended . beyond the building lines hereinbefore established, without the written consent of the grantor. Provided, however, that if, in the opinion of the grantor herein by reason of the shape, dimensions or topography of the land hereby conveyed, or any parcel thereof, created by the subdivision of the same, made in accordance with the terms of this instrument, the enforcement of the foregoing provisions, respecting the location of such dwelling would work a hardship, the grantor herein may modify such provision so as to permit a different location, that will not, in its judgment do material damage to any abutting or adjacent owner.

2. No portion of the within described premises, nearer to any highway than the building lines as hereinbefore fixed, shall be used for any purpose other than that of a lawn. Nothing herein contained, however, shall be construed as preventing the use of such portion of said premises for walks and drives, the planting of trees or shrubbery, the growing of flowers or ornamental plants, or for statuary fountains and similar ornamentations, for the purpose of beautifying said premises; but no vegetables, so-called, nor grains of the ordinary, garden or field variety shall be grown thereon; and no weeds, underbrush or other unsightly growths shall be permitted to grow or remain anywhere upon said premises; and no unsightly objects shall be allowed to be placed, or suffered to remain anywhere thereon.

3. No barn or stable shall be erected, placed or suffered to remain upon said premises, the cost of construction of which shall be less than Four Hundred and no/100 ($400.00) dollars nor for a period of ten years from and after the date hereof, unless the plans and specifications for such structure shall have first been approved in writing by the grantor; and no barn, or stable, garage, water-closet or other outbuilding shall be erected, placed or suffered to remain upon said premises within one hundred fifty (150) feet of said Kemper Road, nor without the written consent of the owner thereof, within ten (10) feet of the side lines of any adjoining lot, nor within one hundred fifty (150) feet of any other highway created by the subdivision of said premises, as is provided for hereinafter; nor in case of such subdivision, without the written consent of the owner thereof within ten (10) feet of the side line of any adjoining lot created by such subdivision; and no water-closet shall be maintained, placed or suffered to remain upon said premises, if sewer be accessible.

4. No place of public entertainment, apartment house, flat, boarding-house, nor building designed for the residence of more than one family and no hotel, tavern, dance hall or other resort shall be established, conducted, maintained, or suffered to remain upon said premises.

5. No spirituous, vinous or fermented liquors shall be manufactured or sold either at wholesale or retail on said premises.

6. No nuisance, advertising sign, billboard or other advertising device shall be permitted erected, placed or suffered to remain upon said premises, nor shall the premises be used in any way or for any purpose which may endanger the health or unreasonably disturb the quiet of any holder of adjoining land.

7. No fence or wall of any kind, for any purpose, shall be erected, placed or suffered to remain upon said premises nearer to any highway now existing, or any hereafter created by the subdivision of said premises in the manner provided for herein, than the building lines hereinbefore established.

8. On the land hereby conveyed, only one dwelling house shall be erected, placed, or suffered to remain unless the land be subdivided, but the same shall not be subdivided into lots having a frontage upon Kemper Road, of less than Sixty-five (65) feet nor upon any other highway created by the subdivision of the same of less than sixty-five (65) feet; and in case said premises shall be subdivided into lots having a frontage upon said Kemper Road, of sixty-five (65) feet or more; or upon any other highway created by the subdivision of the same of sixty-five (65) feet or more, the restrictions, rights, reservations, limitations, agreements, covenants and conditions herein stipulated shall apply to each of the lots into which said premises shall be subdivided. Said dwelling house so erected, placed or suffered to remain upon said land shall be in accordance with the restrictions herein contained, and at least one front or main entrance thereof shall be upon said Kemper Road and the service entrances shall be so constructed as to be inconspicuous from any street upon which said premises front or abut, or from any lot adjoining on either side of said lot.

9. The grantor expressly reserves the sole and exclusive right to grant consents for the construction and operation of street railways, street railway, electric light, telephone and telegraph pole lines and conduits, in and upon any and all highways now existing, or hereafter created, upon which any portion of said premises shall abut.

10. The grantor also expressly reserves, for a period of five (5) years from the date hereof, the sole and exclusive right

to establish grades and slopes on the land hereby conveyed and to fix the grade at which any dwelling shall be hereafter erected or placed thereon, so that the same may conform to a general plan.

11. The herein enumerated restrictions, rights, reservations, limitations, agreements, covenants and conditions shall be deemed as covenants and not as conditions hereof, and shall run with the land, and shall bind the grantee, his heirs, executors, administrators, devisees and assigns, until the first day of May, A. D., 1999."

It then asserted that prior to 1931 it had included the same restrictions in other deeds conveying various parcels adjoining plaintiff's parcel, or adjacent thereto, to other persons; all pursuant to a general plan of uniform restrictions upon all said parcels and that plaintiff knew of such general plan of uniform restrictions affecting the parcels at the time he purchased the parcel now owned by him; that such a plan or scheme was adopted and designed to make the tract within which such parcels are included more attractive for residential purposes; that the purchasers of the parcels mentioned purchased them relying upon such restrictions and in many cases erected or became occupants of single, private family residences thereon and that such situation was evident to plaintiff at the time he made his purchase.

The answering defendant further asserts that there is a defect of parties defendant in this cause due to the fact that the owners of other parcels claimed to be restricted as aforesaid would be affected by adjudication herein and are not parties hereto. It denied all claims of the plaintiff not specifically admitted. Said defendant The Van Sweringen Company later secured leave to make new parties defendant in this cause and filed its Cross Petition (designated Amended Cross-petition). The new parties defendant were Frank Solomon, Dorothy C. Saari, Allen C. Selmin, Elizabeth Sedensky, Mary P. Francis, Upshur and Vera A. Evans, and Edna Patterson. (The interests of Saari are now owned by Evans defendants.) Those parties became new parties defendant herein.

The Amended Cross-Petition set forth the fact that on and prior to February, 1921, the cross-petitioner was the owner of Sublots 20, 21 and 22 in the Resubdivision of its Subdivision No. 11 in the City of Cleveland, which Sublots front on the westerly side of Kemper Road and that the Southerly portion of those sublots is now the parcel owned by plaintiff and the Northerly portion also fronting on the westerly side of Kemper Road is now owned by new defendants Elizabeth Sedensky, Allen C. Selmin, Upshur Evans and Vera A. Evans.

It also averred that pursuant to a general plan of uniform

restrictions upon the entire tract so fronting on the westerly side of Kemper Road, it conveyed all of said land by deeds on or about February 17, 1921, and that such deeds contained the restrictive provisions which were in the deed to Paul H. Owen, already herein referred to. That the parcel conveyed to Owen is now the parcel owned by plaintiff and the parcel owned by new defendant Mary P. Francis. It also stated that the same restrictions were contained in a deed from cross-petitioner to H. C. Van Sweringen recorded in Volume 2479, Page 123 of Cuyahoga County Records of Deeds and that by such deed were conveyed the parcels now owned by new defendants Elizabeth Sedensky, Allen C. Selmin, Upshur Evans and Vera A. Evans and that plaintiff and the owners of said parcels acquired their holdings with full knowledge of the claimed general plan and especially of the specific conveyances so mentioned and of the restrictions recited in them.

To this Answer plaintiff replies, and insofar as necessary to recite here, admits the recording of the deed, supra, in Volume 2479, Page 120 (deed to Owen), and that such deed contained the language above shown, but denies the restrictions claimed were for the benefit of any parties other than the grantor, and asserts they became inoperative or nullified by reason of the fact that the company re-acquired the conveyed premises on or about March 19, 1928,—he therefore denies any other parties to be interested in the issues in this cause and claims to be entitled to adjudication of rights as between plaintiff and defendant Van Sweringen Company only.

New defendant, Mary P. Francis, filed her Answer and Cross-Petition denying the premises now owned by plaintiff and herein involved were free of restrictions in 1931 and 1932 and setting forth that on and prior to April 23, 1914, the plaintiff's parcel and other adjoining lands were owned by The Van Sweringen Company, and that on or about the last mentioned date the company caused a plat of its said land to be recorded in Volume 49, Pages 19-20 of the Cuyahoga County Recorder's records of plats and that such plat provided a 50 foot set-back line from the westerly side of Kemper Road for all lands fronting thereon from Cormere Road to Moreland Boulevard (including plaintiff's parcel) and that all conveyances of said lands subsequent thereto have been subject to such set-back provision.

Counsel for plaintiff stated upon trial that the set-back requirement so pleaded was not being questioned, nor was it in issue in this cause.

Answering defendant Francis then pleads the Van Sweringen-Owens deed, supra, and that in reliance upon the claimed

uniform restrictive conditions in it contained, a single residence having a value in excess of $20,000.00 had been erected on her parcel and was then occupied by her. She then pleads that the Owens deed was to effect a uniform restriction upon all the land in it described and that since such conveyance four of the five parcels into which said land was divided have, each, been improved by a single dwelling, the fifth parcel being the one owned by plaintiff.

Defendant, Mary P. Francis, then cross-petitions, setting forth her ownership of the parcel adjoining plaintiff's parcel and again setting forth the set-back and restrictive provisions already referred to and asks that her rights be declared and, in the event the plaintiff's parcel be found to be free from any of the conditions here in issue, that her parcel be declared to be equally free.

New defendant, Allen C. Selmin, filed his Answer claiming to be the owner of a part of the original parcel herein referred to and denies the claims of plaintiff as to the restrictions in issue; asserts his claim that the restrictions on the parcels are as set forth in Vol. 5045, Page 99 of Cuyahoga County Records. He prays adjudication of all issues raised and that the single family restrictions pleaded therein be found valid and binding upon plaintiff's parcel.

New defendant, Elizabeth Sedensky, filed her Answer and Cross-Petition setting forth that she is the owner of one of the parcels here involved and stating her claims and praying for relief in much the same manner and to the same extent as those set forth by New Defendant, Mary P. Francis, in her Answer and Cross-Petition.

New Defendants Upshur Evans and Vera A. Evans, for their Answer to plaintiff's petition, set forth their ownership of one of the parcels involved and set forth their claims against plaintiff's contentions to the same effect as same are asserted by other defendants and new defendants.

They also file their Answer to the Cross-Petition of New Defendant, Mary P. Francis, by way of a claim that her parcel is subject to the restrictions claimed to be binding on the plaintiff's parcel, and claiming to have a right in themselves to have the same enforced as to the parcel of New Defendant, Mary P. Francis, as well as to the parcel of the plaintiff.

New Defendant, Frank Solomon, filed his Amended Answer denying plaintiff's lot or parcel to be free of restrictions forbidding the erection of an apartment house thereon, and asserting that he, Solomon, is the owner of Sublots 61 and 86 in said resubdivision of The Van Sweringen Company's Subdivision No. 11, his sublot No. 61 being on the corner of

Ardoon and Kemper and Sublot No. 86 being on the corner of Cormere and Kemper. He asserts those two lots, with the plaintiff's parcel and other land, to have been owned by The Van Sweringen Company in 1914 and to have been included in a plat designed to provide a plan of uniform building set-back restrictions and that said plat was recorded in Volume 47 of Maps, Page 19 of Cuyahoga County Records (further details not necessary as set-back line is not in issue, and its effectiveness is conceded by plaintiff). He then asserts that prior to January, 1914, the Solomon sublots, the parcel of the plaintiff and other lands were owned by The Van Sweringen Company, and that it conveyed certain sublots in the subdivision to certain parties by deeds and that all of such deeds contained provisions by which, in each case, the grantee, for himself, his heirs, executors, administrators, devisees and assigns covenanted for the benefit of the grantor, its successors and assigns, that the property shall be used for private one-family dwelling purposes, etc., etc., and that plaintiff's parcel is one of those parcels and that Sublot 61 now owned by Solomon is one, and that it was recited that the covenants were to run with the land, and that they were pursuant to and part of a plan of uniform restrictions in the area;

That in 1913, the Van Sweringen Company conveyed Sublot 86 (now owned by Solomon), and more land, to Shaker Lakes Land Company and that in a deed dated in 1917, filed in 1920, one George A. Bellamy reconveyed to The Van Sweringen Company said Sublot 61, and more land, and that such deed contained the following provision:

"The said grantee in consideration of the execution and delivery of this deed hereby covenants and agrees with and for the benefit of the said grantor to hold said real estate herein described subject to the restrictions, rights, reservations, limitations, agreements, covenants and conditions in the several deeds of the parcels hereby conveyed to the grantor herein from the Van Sweringen Company."

That such deed conveyed a part of plaintiff's parcel and that in 1920 said The Van Sweringen Company conveyed said sublot 61 to one Frank Muni and that the conveyances recited contained provisions substantially identical with those contained in the 1914 deeds of The Van Sweringen Company, already mentioned, and that he, Solomon, is the successor in title and interest to Shaker Lakes Land Company and Frank Muni to Sublots 61 and 86 now owned by him.

Solomon further asserts that in February, 1921, The Van Sweringen Company conveyed certain parcels within the area

claimed by defendants to be restricted against apartment houses, and that in those deeds were covenants in all material respects identical with those in the 1914 deeds, all a part of the claimed general plan. He answers the cross-petition of defendant Mary P. Francis by a claim of interest in her property to the extent of being entitled to have said property held subject to restrictions for single private dwelling purposes.

Defendant, Frank Solomon, also filed his Answer to the Amended Cross-Petition of The Van Sweringen Company, in which answer he admitted the allegations, but asserts he is not the owner of any land on the westerly side of Kemper Road and asks that the petition of plaintiff and amended cross petition of The Van Sweringen Company, be dismissed as to him or that the single dwelling restrictions recited be held to be effective against plaintiff's parcel.

Defendant Allen C. Selmin filed his Answer to the Amended Cross-Petition of The Van Sweringen Company admitting the allegations thereof.

Plaintiff filed appropriate and formal replies necessary to re-assert his original claim and later filed an Amended Reply and an Answer to the Cross-Petitions in which, in addition to some general admissions of facts of record and denials of claims made by other parties hereto as to their effect, he denies that there existed a uniform general plan as claimed, and claiming that if there existed such a plan the defendants in this cause cannot validly claim under it for the reason that The Van Sweringen Company retained the right and power to modify it, and did so modify it. He further sets forth that the City of Cleveland has enacted a zoning ordinance permitting an apartment on plaintiff's lot and that the prevailing conditions and change of the neighborhood are such as to destroy the saleability and desirability of the lot for use other than an apartment site; that on North Moreland Blvd., Kemper Road and Cormere, apartment houses and garages therewith have been built and maintained and that the defendants or their predecessors permitted apartments to be erected and maintained without objection and that, in any event, it would be inequitable to enforce a restriction against plaintiff as sought by the defendants.

He claims further that the deed from The Van Sweringen Company to Warren L. Morris as Assignee for the benefit of creditors was not in good faith, was made without equity or interest because the burden of taxes and assessments upon the lot was so great as to deprive The Van Sweringen Company and its Assignee of any right to modify or affect the land by imposing restrictions thereon, and that it was in-

effective to impose a restriction such as that claimed by defendants.

The Van Sweringen Company, by pleading, denied the new claims made by plaintiff in his Amended Reply and Answer.

Subsequent to the filing of all pleadings above mentioned, and when the battle lines appeared to be clearly defined and fully drawn, the defendant The Van Sweringen Company sought, and was given, leave to file a Second Amended Cross-Petition. It covers considerable of the matter already pleaded but in order to state the claims as finally presented they will be stated briefly.

1. That prior to January 1914 The Van Sweringen Company was the owner of property on Kemper Road, Sublots 19 to 24 inclusive, Sublots 60, 61 and 86 in a Resubdivision of the company's subdivision No. 11 and that such property included what is plaintiff's lot, involved in this cause; that on or about that date, by deeds dated in July, 1913, certain of the sublots were conveyed to certain grantees named.

2. That about the same time The Van Sweringen Company conveyed numerous other lots in the Resubdivision to various persons. That the deeds conveying all of said sublots contained provisions by which the grantee, his heirs, executors, administrators, devisees and assigns, covenanted for the benefit of the grantor, its successors and assigns, that the property conveyed be used exclusively for private one-family dwelling house purposes * * *. That the covenants were to run with the land until May 1, 1999.

That plaintiff's lot was included within the Sublots conveyed to George A. Bellamy (Vol. 1530, Page 240) and to J. H. Goldner, et ux (Vol. 1549, Page 7).

3. That said covenants were a part of a plan of The Van Sweringen Company for the uniform development of the lands conveyed, and adjoining lands, in the Resubdivision as an area devoted exclusively to single residence purposes and that the purchasers knew such restrictions to be imposed pursuant to such plan and for the benefit of all other parcels so conveyed subject to them and for the benefit of land then being retained by grantor.

4. That on January 17, 1920, by deed dated in 1917, said George A. Bellamy reconveyed to The Van Sweringen Company Sublots 19, 23, 61 and more land, containing substantially the same restrictions and, in addition, the following:

"And the said grantee, in consideration of the execution and delivery of the deed, hereby covenants and agrees with and for the benefit of the said grantor, to hold said real estate herein described subject to the restrictions, rights, reserva-

tions, limitations, agreements, covenants, and conditions in the several deeds of the parcels hereby conveyed to the Grantor herein from The Van Sweringen Company."

Said Sublots 19, 23 and 61 are now owned by parties to this cause.

5. On February 17, 1921, The Van Sweringen Company conveyed certain Sublots on the Westerly side of Kemper Road in said Resubdivision to various persons:

Pts 19 and 21, all of 20 to Paul H. Owen, pts 21 and 22 to H. C. Van Sweringen, pts 22 and 23 to H. C. Van Sweringen, and those deeds contained the same covenants and were known to all parties to be part of the plan.

6. That the deed to Owen (Item 5 above) included the lot now owned by plaintiff.

7. That persons now owning land in said Resubdivision fronting on Kemper Road purchased same with full knowledge of the uniform plan claimed and especially of the restrictions in the deeds mentioned.

8. Defendant The Van Sweringen Company still owns Sublot 24.

No pleading has been filed to that Second Amended Petition and, by approval of the court, pleadings to it were waived and all claims made in pleadings in the cause adverse to the rights of any other party, and to which no formal pleading has been filed, are to be deemed denied for the purpose of the joining of issues and adjudication of the cause. Any entry hereafter made on the journal is to so provide, for the protection of the rights of all parties hereto.

For all practical purposes the main riddle presented in this cause will be answered by the answer to one simple, but very sharp, question:

Was plaintiff's lot or parcel restricted, in 1931, for single family dwelling purposes, and, if so, is the right of enforcement of such restriction now vested in any of the parties to this cause?

It is not denied that taxes and assessments against what is now plaintiff's parcel became delinquent within the 1931 tax year and remained unpaid, and cumulated through the years to the date of sale for such taxes by public authority to the plaintiff in late 1948 or early 1949.

Sec. 5762 GC, in its present form, became effective in 1945, and, after providing the means and details of vesting of title in land sold for taxes, recites that the purchaser shall be vested with—

"* * * a new and perfect title, free from all liens and encumbrances, except taxes and installments of special assess-

ments and re-assessments not due at the time of such sale, and except such easements and covenants running with the land as were created prior to the time the taxes or assessments, for the non-payment of which the land was forfeited, became due and payable."

The 1945 form of the statute was an amendment of it as in effect since 1943 when the portion above quoted was first made a part of the statute. While it is, perhaps, not important here, it is probably safe to say that the quoted paragraph was inserted, not to create new law, but to express a recognition and declaration by the legislature of the law as it had already been declared by the courts.

In or shortly prior to 1913 The Van Sweringen Company set out to establish and develop what may be said to be a modern, planned, or ideal suburban community within what is now the City of Shaker Heights, but which was by no means confined within that municipality, but overlapped into a number of municipalities, including the City of Cleveland. In 1914 The Van Sweringen Company recorded a plat of its Subdivision No. 11 covering a large territory, part of which is shown on plaintiff's Exhibit A and includes the parcels now owned by the parties hereto.

In May, 1914, the company filed for record a plat of a Resubdivision of said Subdivision No. 11, see Defendants' Exhibit 21. Part of it is also shown on Plaintiff's Exhibit B.

These plats show Kemper Road running in a general northeasterly direction from Moreland Circle to Cormere; then curving to a general northerly direction and continuing to Ardoon; then turning into a northwesterly direction and continuing to Woodland Avenue, now known as Larchmere Boulevard. Cormere then was a short street starting at Haddam Road and running westerly to its intersection Cormere, with Kemper Road.

Later the name Haddam Road was dropped for that section thereof running from Shaker Boulevard to its intersection with Cormere and the section became known as Cormere. In addition to that change, Cormere was extended westerly from Kemper Road to North Moreland Boulevard; its northerly line being within Sublots 19 and 16, as shown on Plaintiff's Exhibit A, so that Cormere is now a 60 foot street running from Shaker Boulevard to North Moreland Boulevard with plaintiff's parcel being on the northwest corner (created by the extension) of Cormere and Kemper Roads and being a part of Sublot 19 and a part of Sub-lot 20.

In addition to the extension of Cormere from Kemper Road to North Moreland Boulevard (in 1928) Kemper Road was vacated from Shaker Boulevard to Cormere.

Inasmuch as there appear to be three classes or classifications into which the defendants seem to fall on the claims and facts, it becomes necessary to treat them, to some degree at least, separately.

(1) The Van Sweringen Company.

(2) The defendants other than Mary P. Francis.

(3) Mary P. Francis.

On behalf of The Van Sweringen Company it is claimed that it had a general plan for the development of the various areas within the Resubdivision; that plaintiff had notice thereof, is bound thereby and that the company still retains and owns the right to enforce. It claims the plaintiff's parcel to be restricted, among other respects, to a single family dwelling purpose. It is not claimed that the entire subdivision was restricted for single dwellings, but it is claimed that the total and general plan included single dwelling, multiple dwelling, apartment and business sections to. together, form an attractive community. This was common knowedge, but common knowledge of a community plan or purpose witn such a wide scope as that which was being developed in the Shaker Heights area would not be sufficient to put an owner on notice. Notice sufficient to engraft restrictions on use of property is not a matter of general understanding, but a matter of law supported by facts existent and made binding by rules strictly construed, generally, against those claiming restrictions and in favor of the free use of property by its rightful owner.

The court will confine details of operations to the area rather immediately related to the location of plaintiff's parcel. Unless the Van Sweringen Company is able to show a plan applicable to that area, with notice to plaintiff, or to show privity with present right, it is not in a position to enforce the restriction which it claims to exist.

There were no restrictions noted on the recorded plat other than a set back line, about which no question is raised and which is acknowledged to still exist as a binding obligation of owners whose properties are affected, including the plaintiff.

In order to determine whether or not there existed a general plan for the development of the area within which is located plaintiff's parcel, we must, in the absence of plat restrictions, look elsewhere. One of the earmarks of an enforceable general plan is a definiteness or fixed character, and notice of such to those to be bound thereby.

We can set out with a statement that in or about 1913, and subsequent thereto The Van Sweringen Company executed conveyances to various grantees of all the Sublots on the westerly side of Kemper. Road from what is now Cormere

Extension to Larchmere Boulevard, part Sublot 19, all of Sublots 20 to 23, both inclusive; disregarding for the moment Sublot 11 on the corner, fronting on both Kemper Road and North Moreland Boulevard.

The parts of Sublots 19 and 20, now owner by plaintiff, together with the remainder of Sublot 20 and all of Sublot No. 21 were conveyed to Owen by deed containing the provisions already set forth in full in this memorandum (see Defts' Exh. 13) and which were imposed in like manner upon the other parcels by separate conveyances. (See other Exhibits.)

It will be noted that the restrictive covenants were solely: "for the benefit of the said grantor, its successors and assigns."

There is not even a suggestion that anyone else is to be benefitted nor that protection will be given the grantee by similar impositions on adjoining or adjacent parcels of the grantor. It did provide that the restrictions were to be applicable to each parcel in case of a subdivision of the larger parcel. It reserved no right in the grantor to cancel, change or modify the restrictions.

The record does not disclose any attempt to affirmatively impose any other or different deed restrictions on the last mentioned parcels prior to the tax delinquency (1931).

In 1928 the Owen parties re-conveyed to The Van Sweringen Company the parcel now owned by plaintiff. (Plaintiff's Exh. F.)

That conveyance was made subject, inter alia, to: "the restrictions, rights, reservations, limitations, agreements, covenants, and conditions of record * * *."

The Owen parties retained what is now the parcel of defendant Francis and later conveyed it to Union Properties Company (Deft's Exh. 24) subject to "restrictions of record." This, however, was in 1940. The Francis parties acquired their parcel by Quit Claim Deed from The Union Properties Company in 1940 (Deft's Exh. 25).

The plaintiff's parcel and the Francis parcel came down under the same deed restriction, already herein set forth, but subject to some new facts.

(1) The plaintiff's parcel had been reconveyed to its original restrictor—The Van Sweringen Company, subject to restrictions of record, but not imposing any. Those restrictions were for the benefit of The Van Sweringen Company only so that it must follow that it could henceforth forget them. A good deal has been said in this case, orally and by briefs, of merger of title and restrictions in such a case. Mergers are a matter of intent and are not generally favored. See Am. Jur. Vol. 19, pages 589 to 591. The court does not, in view of

all the facts of this case, deem merger to be very importantly involved here. The Van Sweringen Company had not extended the benefit of the restrictions beyond itself, its successors and assigns.

In England and the United States the legal doctrine of merger can almost be said to be extinct. Merger has become a matter of equity and will be viewed upon equitable principles. In this case there are no equities involved due to the fact that the entire estate title and burdens thereon—found their way back to the one owner, with full notice to all the world that whatever restrictions had theretofore burdened the title were for the sole benefit of the Van Sweringen Company the former, and again the present owner.

(2) The Van Sweringen Company had brought about (in 1928) very material changes in the immediate vicinity of plaintiff's parcel, and indeed, to the parcel itself. It had vacated Kemper Road from Shaker Boulevard to Cormere and had opened Cormere from Kemper to North Moreland Boulevard, an apartment section. That action had made plaintiff's parcel a corner lot and in a situation and relationship to some other properties entirely different to what had theretofore been the case.

(3) While the court, as already indicated, deems the rights of plaintiff, insofar as restrictions are concerned, to be established as of 1931, the date of tax delinquency, it is certainly permissible to consider subsequent facts to evidence plan, intent or purpose.

In 1935 The Van Sweringen Company mortgaged what is now the plaintiff's parcel, and more land, to The Vaness Company (Plaintiff's Exh. HH). Plaintiff's parcel was designated as Parcel 1. The Company, by that mortgage deed, undertook to impose restrictions and provided that what is now plaintiff's parcel was to "be used solely and exclusively for residence purposes of the apartment house type, meaning thereby buildings or structures designed for the separate use and occupancy of four or more families etc. * * *."

It was provided that the mortgagee, for the benefit of the mortgagor, its successors and assigns, was to "hold, use, occupy and convey the premises etc., etc., in conformity with and subject to those restrictions, etc."

It is claimed by plaintiff that if intent be necessary to a merger, it is, by the mortgage provisions, clearly evidenced and established. In a brief on behalf of some defendants it is asserted that such restrictive provisions found their way into the instrument as a result of a "blunder." Examination of the instrument Exh. HH, makes that theory difficult to believe. The original restrictions were for the company's

sole benefit, the fee title had returned to it and it was now in a position to dispose of it for what would, in view of the changed conditions, be its highest and best use—an apartment site.

(4) Other changes brought about by actions of the company, and which may be referred to in some detail, later.

We now come to consider the Sedensky parcel, next north of the Francis parcel, parts Sublots 21 and 22. This parcel was subject to the so-called original restrictions herein copied in full.

In 1921 the title to this parcel was vested in The Van Sweringen Company and was by it conveyed to H. C. Van Sweringen with a recitation of each and every restriction contained in the deed of original restriction, and with a very important addition or appendage as follows:

"The grantor reserves the right to change or cancel any or all of these restrictions if, in its judgment, the development, or lack of development of adjacent property makes that course necessary or advisable." (Defts' Exh. 14.)

The deed, Defendant's Exhibit 14, containing the quoted reservation, was filed for record at 2:24 P. M., on February 17, 1921. At 2:26 P. M., of the same date there was a deed filed conveying the parcel from H. C. Van Sweringen to one Nettie Pech (Pltf's Exh. W). That deed contained, in detail and in substance, the original 1914 restrictions plus a reservation for the benefit of The Van Sweringen Company of the addition referred to above as having been included in deed, Deft's Exh. 14. It was set forth as follows:

"The grantor reserves to The Van Sweringen Company the right to change or cancel any or all of these restrictions, if, in its judgment the development, or lack of development of adjacent property makes that course necessary or advisable." (See Pltf's Exh. W.)

Defendant Sedensky is the successor in interest to the Pech title.

As evidence of the fact that there existed no uniform plan it is interesting to note that on the same date as the deed to H. C. Van Sweringen, Deft's Exh. 14, was filed, 2:24 P. M., February 17, 1921; and the deed, in turn from H. C. Van Sweringen to Nettie Pech, Pltf's Exh. W, was filed, 2:26 P. M., same date—parts Sublot 21 and 22,—The Van Sweringen Company was deeding—filed 2:17 P. M.,—parts of Sublots 19, 20, and 21 to Paul H. Owen (Deft's Exh. 13) subject to the same restrictions but **without** the right to change or cancel those restrictions.

The record is lacking any evidence indicating that the

plaintiff's parcel was ever restricted for the benefit of the Sedensky parcel but search of the Sedensky title would have disclosed the fact that The Van Sweringen Company was to be the sole beneficiary of the restrictions on that parcel, and furthermore, could cancel them entirely if, in its judgment, it became necessary or advisable.

The Sedensky parcel restrictions and reservations are not those applicable to the Francis parcel, next door South, nor are they anything like those applicable to the Selmin parcel, next door North.

We come now to the Selmin parcel next north of the Sedensky parcel, part of Sublot 22.

This parcel was subject to the so-called original restrictions. (See Defts' Exh. 2.)

It is not necessary here to recite the history of this title from the imposition of the original restrictions, because The Van Sweringen Company re-acquired the title and later conveyed it, in 1932, by deed, Vol. 4226, Page 690, to Ray B. Scholl. (Deft's Exh. 27.) This deed imposed restrictions, in general, as those heretofore imposed on this and the other parcels along the street but with very material changes and all-important additions.

(1) The value of a proposed dwelling ($8000) was eliminated entirely.

(2) Former deeds had called only for approval of the "Plans and specifications" by the grantor. This deed called for approval of the—"architect therefor, the size, type, cost, materials of construction, the color scheme therefor, etc."

(3) In previous deeds the location of a dwelling to be placed was prescribed or outlined. In this deed—"the lot plan showing the proposed location of said dwelling upon the lot and the plans, specifications, and details therefor, shall have been approved in writing by The Van Sweringen Company and a copy thereof shall have been lodged permanently with The Van Sweringen Company, etc."

(4) This provision was added: "All driveways, except on corner lots shall be placed upon said premises at the left side of said residence as viewed from the street. The Van Sweringen Company will fix the location for the drives upon corner lots, when called upon to do so."

(5) The former deeds had prohibited "barn or stable" having a value less than $400.00, and prohibited placing "barn, stable, garage, water-closet or other outbuilding within 150 feet of Kemper Road nor within 10 feet of side line of any adjoining lot without the consent of the owner thereof." This was now changed to provide that—"no outbuildings except a private garage for the exclusive use of the owner, shall be

erected \* \* \* nor until the size, type, cost, materials of construction, color scheme therefor, the location of said garage upon the lot, etc., etc., etc., is approved by The Van Sweringen Company."

(6) A new restriction was imposed, as follows:

"No sublot of the property hereby conveyed shall be occupied, leased, rented, conveyed, or otherwise alienated, nor shall the title or possession thereof pass to another, without the written consent of The Van Sweringen Company, except that said The Van Sweringen Company may not withhold such consent, if and after a written request has been made to The Van Sweringen Company to permit such occupation, leasing, renting, conveying, or alienation, by a majority of the owners of the sublots, which are subject to the same restrictions as are in this Section No. 5 set forth, and which adjoin or face the sublot, concerning which consent is requested, upon both sides of the street, or streets, such sublot fronts or abuts and within a distance of five (5) sublots from the respective sidelines thereof, except transfer of title by way of devise or inheritance, in which case the devisee or heir shall take such property subject to the restrictions herein imposed, and except that said property may be mortgaged or subjected to judicial sale, provided in any such case that no purchaser of said premises at judicial sale shall have the right to occupy, lease, rent, convey, or otherwise alienate said premises without the written consent of The Van Sweringen Company first had and obtained in the manner above stated.

"It being understood, however, that the rights hereby reserved to The Van Sweringen Company shall apply with equal force and effect to its successors and assigns, but in the event the ownership and control of the rights hereby reserved pass from the hands of The Van Sweringen interests, either, by reason of the appointment of a receiver, assignment for the benefit of creditors bankruptcy, by sale under legal process of any kind, by the transfer of the ownership of a majority stock to other interests, or otherwise, the provision for consents by The Van Sweringen Company in this section provided for shall be deemed to be sufficiently obtained if obtained from a majority of the owners of the said adjoining and facing sublots, and thenceforth the right to enforce the restrictions in this section of this deed contained shall immediately pass to the owners of the said adjoining and facing sublots and be exercised by the written consent of the majority of the owners holding title to said adjoining and facing sublots."

(7) "No heating apparatus, in, or for any building upon the premises hereby conveyed, shall be operated with any

but smoke-free fuel, unless such apparatus be equipped, operated and maintained with such devices as will prevent smoke."

(8) Still again, new:

"The restrictions imposed by this instrument upon the use of the within granted premises shall not be held to prevent the use of adjoining and adjacent lands by The Van Sweringen Company, or its successors or assigns, for such other purposes, or in such other manner as will not in its judgment, adversely affect the premises hereby conveyed, to a material degree, and such use of such other lands shall not be held as relieving the grantee hereunder from the restrictions imposed upon the premises hereby conveyed.

(9) "The Van Sweringen Company for itself, its successors and assigns, reserves also the right to waive, change or cancel any or all of these restrictions, if, in its judgment the development or lack of development of adjoining or adjacent property in the subdivision of which these premises are a part, makes that course necessary or advisable."

There were other very material and major changes from, or additions to, the restrictions recited in the previous deeds mentioned, but what has been here quoted will suffice to evidence the material change. For the entire text see Defendants Exhibit 27.

Defendant Selmin secured his title by deed from Scholl (Defts' Exh. 28) in 1936, with no mention of any restrictions other than "zoning or other ordinances, if any affecting or pertaining to said premises."

We now come to the next, and last, parcel. It is owned by defendants Evans and is parts of sublots 22 and 23. This parcel was subject to the same 1914 restrictions as those recited in the Owen Deed, supra, Volume 2479, page 120. (Defts' Exh. 13.)

In 1921 The Van Sweringen Company conveyed this parcel to H. C. Van Sweringen and re-imposed in substance the original restrictions, but with a new reservation as follows:

"The grantor reserves the right to change or cancel any or all of these restrictions, if, in its judgment, the development, or lack of development of adjacent property makes that course necessary or advisable." (Defts' Exh. 15.)

Coming to 1926, we find The Van Sweringen Company, having re-acquired this parcel, conveying it to one Mary Ratica subject to new restrictions identical with those in the deed to Scholl—Defts' Exhibit 27. The deed to Ratica is Defts' Exh. 17. By mesne conveyances the title to this parcel became vested in Dorothy C. Saari and she, in turn, conveyed it to defendants Upshur Evans and Vera A. Evans by deed dated

September 12, 1949. (Defts' Exh. 18.) The conveyance was subject to restrictions of record.

Following what has already been set forth it is certainly pertinent to note what has become of that part of sublot 23, being all of sublot 23 excepting the small portion of it conveyed to the Evans parties. Sublot 23 fronts on the westerly side of Kemper Road, adjoins the Evans parcel and is one of the sublots conveyed to George A. Bellamy subject to the same restrictions as were imposed by the 1914 deeds upon all the parcels on the westerly side of Kemper Road from Cormere Road to Larchmere Boulevard (Defts' Exh. 1).

In 1920, by deed dated in 1917, George A. Bellamy reconveyed the sublot to The Van Sweringen Company (Defts' Exh. 10). The exhibits introduced do not disclose the transfer or title changes as to the part of the sublot which is not now owned by the Evans parties, but on trial of this cause it was stated that it is used for or in connection with an apartment building which is now located on sublot 11 having a frontage on the westerly side of Kemper Road (adjoining sublot 23) and also a frontage on the easterly side of North Moreland Boulevard. (See Defts' Exh. 19.)

Considerable has been said about sublots 61 and 86 on the easterly side of Kemper, practically across the street from the parcel of the plaintiff and some of the defendants. The two sublots are or were owned by defendant Frank Solomon.

Following these titles would add nothing in particular to the total picture here. The result would merely be cumulative or corroborative of the factual situation already shown as existing in relation to the properties of the plaintiff and other defendants.

A word regarding each lot will suffice. Lot 61 was conveyed by The Van Sweringen Company to George A. Bellamy in 1914 (Defts' Exh. 8) subject to the so-called 1914 restrictions, already herein shown. The sublot was re-conveyed to the Company and it was later conveyed by the Company to one Frank Muni (Defts' Exh. 11) and Solomon claims to be the successor to the rights of Muni. The deed to Muni had in it, not the original restrictions of 1914, but those referred to as being included in the deed to Scholl, supra (Defts' Exh. 27).

Sublot 86 was owned by The Shaker Lakes Land Company in 1924 and it conveyed the sublot to Wm. J. Schirmer by deed. Plaintiff's Exhibit DD.

That deed contained in general and substance the 1914 restrictions, but again clearly imposed for the benefit of The Van Sweringen Company.

"Reserving also and granting to The Van Sweringen Com-

pany the right to change or cancel any or all of these restrictions if in its judgment, the development or lack of development of adjoining or adjacent property makes that course necessary or advisable."

Again:

"The restrictions imposed by this deed upon the use of the within granted premises shall not be held to prevent the use of adjoining and adjacent lands by The Van Sweringen Company or its assigns for such other purposes or in such other manner as will not, in its judgment adversely affect the premises hereby conveyed to a material degree, and such use of such other lands shall not be held as relieving the grantee herein from the restrictions imposed upon the premises hereby conveyed."

Defendant Solomon is the successor in interest and title to Schirmer. The restrictive features affecting his title were never applicable to the plaintiff's parcel nor could they possibly be said to be part of a common or uniform plan as claimed.

The Van Sweringen Company has not shown any interests or properties of its own to protect in this case, beyond its ownership of sublot 24. (Defts' Exh. 20.) This sublot was conveyed in 1914 by The Van Sweringen Company to Howard U. Maxwell (Defts' Exh. 6) subject to the so-called 1914 restrictions; those, be it remembered, being—"for the benefit of the said Grantor, its successors and assigns." The sublot finally reached the hands of one Fred Epstein and he reconveyed it by Quit Claim Deed to The Van Sweringen Company in 1927 (Pltf's Exh. CC) without mentioning any restrictions whatever.

The record does not disclose the imposition of any restrictions on this sublot beyond the 1914 restrictions shown in Defendant's Exhibit 6, which were solely for the benefit of The Van Sweringen Company. The company, having re-acquired the title, cannot possibly be held to observance of those 1914 restrictions as to sublot 24. Having placed itself in a position to own sublot 24 and to use it for any purpose of its own choosing it cannot very well claim that its own single holding (sublot 24) in theory, is any part of a general or common plan with plaintiff's parcel now. Placing the rights of The Van Sweringen Company as to sublot 24 alongside the lack of right of plaintiff or any defendant herein to require of the company any observance of the single dwelling restriction, we must conclude that the company is the owner of a sublot wholly unrestricted if it cares to treat it as such.

The court does not deem it necessary to the proper adjudication of the rights of the parties hereto to lengthen this memo-

randum to the extent which would be necessary to set forth the facts concerning other changes in the immediate vicinity of plaintiff's parcel, chiefly,. if not solely, as Van Sweringen Company projects. As already indicated, there were no restrictions imposed by the recorded plat excepting a set-back line, about which no question is raised.

It is proper, however, as an example of the complete control exercised by The Van Sweringen Company to refer to the instrument executed by the company in favor of The Shaker Company in 1928. Plaintiff's Exhibit D.

Parcel No. 5 described in that instrument was sublot 87 and parts of sublots 17, 18 and 19, and other parcels. To judge the effect of the terms of this instrument upon plaintiff's parcel see Defendants' Exhibit 21. The purpose of the instrument itself is clearly stated:

"Whereas, by various deeds and agreements, certain restrictions have been imposed upon said premises as to use, type of buildings to be erected thereon and the location of such buildings upon said premises, and other like restrictions; and

"Whereas, there has been reserved and/or granted to The Van Sweringen Company, an Ohio corporation, the right and authority to release, change and/or modify such restrictions when in the judgment of The Van Sweringen Company that course seems necessary or advisable for the proper development of such property; and

"Whereas, in the judgment of said The Van Sweringen Company it is both necessary and advisable for the proper development of said property to release, change and modify such restrictions as herein set forth, and in the judgment of said The Van Sweringen Company the releases, changes and modifications herein set forth will not do any damage to any abutting or adjacent owner;

"Now, therefore, in consideration of the premises and of the sum of Ten Dollars ($10) and other good and valuable considerations received to its full satisfaction from The Shaker Company, and by virtue of the powers, right and authority reserved and granted to The Van Sweringen Company as aforesaid and as owner of adjacent or adjoining lands and otherwise, The Van Sweringen Company, the Grantor, hereby releases, remises and quitclaims all of its right, title and interest in and to the premises aforesaid to The Shaker Company, the Grantee, its successors and assigns.

"To have and to hold the premises aforesaid, with the appurtenances thereunto belonging, to the said Grantee, its successors and assigns, so that neither the said Grantor, nor its successors or assigns, nor any other persons claiming title

through or under it, shall or will hereafter claim or demand any right or title to the premises, or any part thereof, but they and every one of them shall by these presents be excluded and forever barred.

"It is the intention of this deed to, and said The Van Sweringen Company hereby does, release, change and modify said restrictions so that the said premises are free and clear from any and all restrictions as to the use of said premises, the kind or type of building or buildings that may be erected thereon, and the location of any buildings upon said premises, saving and excepting only that no intoxicating liquors or beverages shall be manufactured, sold or dispensed upon said premises except through a drug store and then only upon prescription of a regularly licensed physician."

The record in this cause is lacking a single instrument of conveyance, or other, imposing a single restriction affecting, or for the benefit of, any parcel other than the one being specifically conveyed. It is lacking the imposition of any restriction by or for the benefit of anyone other than The Van Sweringen Company.

Re-conveyances to the company were, in many instances, made subject to existing restrictions but that is far from imposing any. It is quite clear that no impositions were intended because the reconveyances were to the company itself, whose restrictions they were and for whose sole benefit they were imposed at all. The court is of the opinion that, even if it be conceded that there were re-impositions by those deeds of re-conveyance, the present issues would not be affected. That, however, need not be, nor is it here decided. The plaintiff's parcel was never made subject to any restrictions other than the so-called 1914 restrictions. Those were for the sole benefit of The Van Sweringen Company. It reserved no right to cancel, change, waive or modify them in any manner. It now asserts that those were imposed as a part of a common or general plan. It is claimed that the westerly side of Kemper, developed with single, private dwellings, was a unit with the plaintiff's parcel. If that was intended, it certainly proved to be an abortion. On that very strip it is shown that the company undertook again to convey and reconvey titles and to impose restrictions, and certainly reservations, of a very important character that under the wildest stretch of the imagination would not be binding on plaintiff's parcel. Those changes were of a kind and character which, under almost any conditions, would bar the company from any right to enforce a single family dwelling restriction against plaintiff's parcel. On the one hand, the

company would have to claim the right under its theory of a common or general plan; when having to admit that, by its own actions, the plan was not common or general, it having changed the restrictions on some of the parcels adjacent to the plaintiff's parcel—on the westerly side of Kemper Road—so that now it had the right to determine many things as to the development of those parcels that it could not determine as to plaintiff's parcel and that it now had, on those parcels other than plaintiff's, the right to: "waive, change or cancel any or all of these restrictions, if, in its judgment, the development or lack of development of adjoining or adjacent property in the subdivision of which these premises are a part, makes that course necessary or advisable."

How can restrictions be claimed to be common or to be part of a general plan when one sublot must be used for private, single, dwelling purposes when adjacent parcels conveyed by the original common owner and situated on the same side of the street, in the same strip, may at any moment be relieved of any and all restrictions by simple decree of such original common owner?

In any and all events the restrictions sought to be imposed within the conveyances disclosed by the record were for the benefit of The Van Sweringen Company and its successors in interest; they were far from being uniform in the cases of adjoining and adjacent parcels; they are not protective of any present rights or interests of the company and are, therefore, not enforceable by it. Even if the company was the owner of adjacent property it is the court's opinion that it would still be barred under the doctrine of estoppel from any right to enforce the restriction claimed against the plaintiff.

May defendants other than Francis enforce the claimed single dwelling restriction?

They are owners of adjacent property on which single houses are situated and claimed to have been erected in conformity with, or obedience to, the restrictions. Again it is to be remembered that the restrictions on all the involved parcels were for the benefit of The Van Sweringen Company and its successors and assigns. Its successors and assigns did not mean its grantees—it meant its corporate successors. Having found no general plan to exist we are left with individual conveyances to consider. Not a single conveyance shown by the record indicates an intention to convey to the owner of one parcel any interest whatever in any restrictions on another parcel, or a right to enforce them. There were no "mutual" restrictions imposed on any of the parcels. Not in any conveyance is there any guarantee that

plaintiff's parcel is to be bound for the protection of any other parcel. Furthermore, defendants and cross-petitioners in this cause acquired their properties upon relatively late or recent dates—long after the state of the title of plaintiff's parcel was established and fully known. Their titles and rights cannot rise above the titles and rights of their predecessors. Their predecessors were parties to (1) very material and vital changes in the restrictions on their own parcels, claimed to be part of a common plan, and (2) a reservation by The Van Sweringen Company of its right to waive, change or cancel the restrictions entirely. It is probable that the company could have done that in any event because all restrictions were for "its" benefit. But, and be that as it may, the predecessors in title of defendants here involved placed The Van Sweringen Company in a position to completely wipe out restrictions on parcels adjacent to plaintiff's parcel, and now the present owners, holding under that state of facts, claim to be entitled to hold plaintiff's parcel to a single family dwelling purpose on the theory of a general plan. There is, in this case, no legal basis for relating the restrictions on any one parcel to a binding effect upon any other or adjacent parcels; and even though there existed such basis at one time it has completely vanished by reason of the acts of the predecessors in title of defendants here. It is not sufficient to say that the parcels of defendants, other than The Van Sweringen Company, have been improved by the erection of single family dwellings nor to claim that the company has not exercised its right to waive, change or cancel the restrictions imposed on individual parcels. It has exercised its rights in a way which undoubtedly affects plaintiff's parcel. We cannot view the matter from the standpoint of what has physically happened, but must deal with it on the basis of what is legally permissive and what is found to be the legal status on the basis of facts shown. The courts of this state have consistently held that the mere knowledge in the owner of a sublot or parcel adjoining or adjacent to him of the fact that such sublot or parcel is restricted to certain uses is not sufficient to bind the two parcels one to the other unless the restrictions affecting the one are common, or are stated to be for the benefit of the other, or vice versa, and this is true though the restrictions imposed upon the parcels are identical if such restrictions are imposed for the sole benefit of the common grantor. The court finds that defendants herein, other than The Van Sweringen Company and Francis, are without right in the matter of restrictions, or enforcement of them, against the plaintiff's parcel beyond the set-back plat restriction.

May defendant Francis enforce the single dwelling restriction?

Defendant Francis claims to occupy a position different in fact and effect from that occupied by other defendants as adjacent owners. The parcel of defendant Francis adjoins plaintiff's parcel and both parcels were, subsequent to the imposition of the 1914 restrictions, owned by one owner as one parcel and subject to the 1914 restrictions, with a proviso that in the event the parcel was subdivided into more than one parcel the restrictions were to apply to each parcel. The parcel was subdivided into two parcels—the parcel now owned by plaintiff and the one owned by defendant Francis. It is now claimed such a provision in the deed of conveyance of the larger or total parcel was notice to plaintiff of the restriction of the Francis parcel and of his parcel alike. Granting that the provision concerning subdivision and restriction was in plaintiff's chain of title, it is necessary to determine the substance and effect of such notice. Of what would plaintiff be so notified? The restrictions already imposed were not to be changed nor was there any suggestion that they were to be "mutual" in case of subdivision of the parcel. They were merely to be deemed "imposed" on "each" parcel. They were still for the benefit of The Van Sweringen Company, they were not mutual and it is to be doubted if the provision for imposition on each parcel in case of subdivision had any effect whatever, but that question is not here decided. The facts surrounding the Francis and the plaintiff's situation, and their relation to other parties hereto, should perhaps be mentioned again at this point.

(a) The Francis and plaintiff's parcels are claimed to be within the strip on the westerly side of Kemper Road subject to a common or general plan.

(b) All the parcels were once subject to the same restrictions imposed by The Van Sweringen Company by individual deeds as distinguished from a plat.

(c) The restrictions were imposed for the sole benefit of The Van Sweringen Company.

(d) The Van Sweringen Company has changed those restrictions on several of the parcels on the strip on Kemper owned by some defendants herein.

(e) The Van Sweringen Company has reserved the right to change, waive or cancel all the restrictions on some of the parcels supposed to be commonly restricted without, as far as the record shows, even consulting other adjoining or adjacent owners.

(f) All of these changes had taken place and were matters

of record long before the purchase by, and conveyance to, defendant Francis.

(g) While the court is establishing the rights of the plaintiff as of 1931, some developments thereafter, disclosed by the record, furnish some evidence of intentions or interpretations. Prior to 1931 the Van Sweringen Company had re-acquired plaintiff's parcel. The parcel had theretofore been subject to the 1914 restriction, but that restriction was solely for the benefit of The Van Sweringen Company, and, being so restricted in its benefit, would automatically merge, thereby leaving plaintiff's parcel free from the restrictions criginally imposed by deed. Subsequent to that date The Van Sweringen Company never conveyed plaintiff's parcel except by the deed, in 1940, to the Assignee for the benefit of creditors (deed not in evidence here, but referred to on trial), and except by mortgage deed (Plaintiff's Exh. HH) in which the plaintiff's parcel was No. 1 among many parcels and in which Parcel No. 1 was treated at some length; no mention being made of any previous restrictions but restriction of the parcel being made to use for "apartment house" purposes.

(h) Other matters shown by the record but which need not be detailed here.

All of these matters preceded acquisition by defendant Francis of title to the parcel adjoining plaintiff's parcel. (Defts' Exh. 25.) The most that can now be said of the record notice to plaintiff is that he had notice of the fact that nis parcel had once been subject to the so-called 1914 restrictions and that the now Francis parcel had been subject to those same restrictions, with no indication or suggestion that such restrictions were "mutual."

On the basis of what has been said, the court must find that the defendant Francis is without right to enforce any restrictions against plaintiff's parcel, other than the plat set-back provision mentioned. Defendant Francis has sought affirmative relief by way of adjudication of her rights as to her parcel in the event that the court's finding be what it has developed to be. On the same basis the court must find that the parcel of Francis defendant is held by her free from any right in either The Van Sweringen Company or any of the other defendants herein to enforce against her parcel any of the restrictive covenants in issue here.

Summarizing the facts disclosed by the record, very little law need be cited:

1. We had a subdivision without restrictions noted on the recorded plat.

2. Restrictions, fairly uniform, are imposed on individual

lots on a strip now claimed to be restricted for private, single dwellings—Kemper Road from Cormere to Larchmere Boulevard—six or eight lots in all, and also upon lots closely related to them but now in another picture as hereinafter noted.

3. Those restrictions are, in each case, stated to be for the sole benefit of the Van Sweringen Company.

4. Other lots in the immediate neighborhood were similarly restricted.

5. The Van Sweringen Company proceeds to change the neighborhood in a most material way; to open up a street through some of the restricted lots; to place plaintiff's lot (originally restricted) on a corner of a street on which there are apartments and other occupancy far removed from single dwelling purposes which other occupancy came by reason of the acts of The Van Sweringen Company itself.

6. The Van Sweringen Company proceeds to secure reconveyance of it and some of the very lots on the Kemper Road frontage claimed to be so highly restricted—and which are adjacent to the plaintiff's lot—and conveys them to others subject to restrictions entirely different from those originally applicable to them and to plaintiff's lot, reserving the right to cancel, change or modify the restriction upon its own judgment. These arrangements were made with predecessors in title of some of the defendants and cross petitioners in this cause and were made prior to the purchase by such owners of their present holdings.

7. Restrictions on lots in the immediate neighborhood, originally restricted with plaintiff's lot are released and uses other than for single dwellings are authorized thereon and actually come to being.

8. Not a word anywhere to indicate any benefit to be conferred upon or rights vested in, any persons or property other than the grantor company and its property and not the slightest suggestion in any deed that the restrictions imposed were general or mutual.

9. Re-acquisition by the Van Sweringen Company of the lot now owned by plaintiff, with no restrictions other than the original 1914 restrictions for the benefit of The Van Sweringen Company, and its holding of such title until the taxes became hopelessly delinquent (1931 forward) and the lot transferred to a trustee for the benefit of creditors (1940) and sold to plaintiff at tax sale (1948 or 1949).

10. Only lot re-acquired and now owned by The Van Sweringen Company in the neighborhood or vicinity is a sublot (No. 24) originally restricted for the company's sole benefit and undoubtedly now free of restrictions due to merger. In

any event the erection of a single dwelling on plaintiff's lot could not benefit lot 24 nor could erection of an apartment possibly injure it.

Restrictive covenants are in the nature of contractual rights and are creatures of equity arising out of contract. That being so the imposition of restrictive covenants binding upon future owners and also binding, among themselves, upon individual lot owners who are grantees of the original owner requires compliance with rather precise requirements. Mere conveyance of individual lots to various grantees by deeds containing building restrictions is not of itself sufficient to create a general plan. 14 Amer. Jur. 613, Section 202:

"* * * The most common test of the existence of a general building or neighborhood scheme is an intent that the protection of the restrictive agreements inure to the benefit of the purchasers of lots in the tract. * * * Equity will not enforce restrictive covenants in deeds at the instance of other property owners unless there is reasonable uniformity in the restrictions imposed, so that each lot owner is afforded a protection against the acts of others equal to the restriction on his own acts."

What is essential to a general or common plan of restriction is not open to doubt in Ohio.

In 1917 our Supreme Court made clear what would **not** constitute such a plan. Kiley v. Hall, 96 Oh St, 374:

"1. The purchaser of a lot in an allotment whose deed contains restrictions as to the use of the lot is not chargeable from that fact alone with notice that like restrictions are contained in the deeds to other purchasers of lots in the allotment.

"A lot owner cannot maintain an action to enforce by injunction the observance or restrictions contained in the deed of another lot owner where it does not appear that the latter purchased his lot with notice of a general plan for the improvement of the lots of the allotment in accordance with the restrictions contained in his deed, or with notice that such restrictions were inserted in his deed for the benefit of the owners of the other lots in the allotment."

## COPELIN v. MORRIS et.

As expressive of how close in principle the above case is to the instant case we quote from the opinion, pages 379 and 380:

"In all the deeds from Kyle for the lots in his allotment there are contained restrictions identical with those contained in the deeds to plaintiff in error, with the exception of the deeds for the two lots at the northwest corner of Oak Hill avenue and Glenaven avenue, which, it appears, were practically the first lots sold by Kyle. In inserting these restrictions in the deeds, Kyle, no doubt, had in his own mind and contemplated a general plan or scheme of improvement for these lots. It is also manifest from the fact that he retained none of the property that this general plan was intended by him to be for the benefit of his grantees and not for himself. But can it be said that such plan came to the notice of his grantees when they purchased their lots, or that they purchased them with reference thereto? If the plan had been noted upon the recorded plat, notice thereof would be imputed to each lot purchaser. It would be a part of his chain of title. And, again, Kyle, the alloter, in his deeds did not advise a purchaser of a general plan, and did not convenant that all sales of lots in his allotment should be made subject to like restrictions, as was done in **Wallace et al, v. The Clifton Land Co., 92 Oh St, 349**, nor did each purchaser covenant and agree as well for the use of every other person who might become the owner of a lot in the allotment as for the use of his grantor that he would observe the restrictions as was done in **McGuire v. Caskey, 62 Oh St, 419.** In those two cases, which are entirely different from the case here, the court held that a lot owner could enforce by injunction against any other lot owner the restrictive covenants written into each deed in pursuance of the general plan."

**Hayslett v. Shell Petroleum Corporation, 38 Oh Ap, 164** (Cuyahoga County)

"1. Lot owner cannot enforce restrictions in another's deed unless latter purchased with notice of general plan or with notice that restrictions were inserted in deed for benefit of owners of other lots.

"2. There being no general plan and no restrictions written in recorded plat and none in defendants' deed and defendants having no notice, actual or constructive, of restrictions or of any plan in mind of original allotment owner, restrictions were not binding on defendants.

"3. Restrictions to single family residences in deeds **held** ineffective, where changed conditions of neighborhood substantially destroyed value of restrictions."

In this case the Court of Appeals followed the rule laid down in **Kiley v. Hall, supra,** and also cited **Adams v. Donovan, 97 Oh St, 83,** as additional authority, and then stated on pages 167 and 168:

"Whatever may have been in the minds of the original grantor and the first grantees, as to a general plan of allotment, and whatever may have been the rights or remedies of subsequent lot owners against the original grantor for breach of covenant, it seems clear that there was no general plan of allotment in the sense that it affected all of the lots, and that no general plan of allotment was set up in the original plat of subdivision.

"If the claim of the plaintiff were true that there was a general plan of allotment, and that the defendant had effective notice of the restrictions because some deeds not in the grantee's chain of title contained the restrictions it would compel every purchaser of a lot in any allotment, no matter of how long standing, to search the deeds of each and every other purchaser of such a lot, from the time of the sale of the first lot down to the date of the last purchaser, to determine whether or not there was incorporated in any of the deeds an agreement by the original owner that all the lots should be sold with restrictions."

**Lopartkovich v. Rieger, 66 Oh Ap, 332, 20 O. O. 167** (Lorain County): "When an owner of an allotment has a general plan of uniform restrictions for the lots in the allotment, and such restrictions are inserted in each deed of the allotment, one purchaser cannot enforce such restrictions against another purchaser unless the restrictions are so drawn that each purchaser covenants and agrees, for the benefit of every other lot owner, that he will observe the restrictions, or unless the purchaser against whom the restrictions ·sought to be enforced has notice of such general plan and purchases his lot with reference thereto. Such notice is shown when the recorded plat contains the general scheme or plan, or when the allotter in his deeds covenants that all sales of lots in his allotment shall be subject to like restrictions." This case again follows Kiley v. Hall, supra.

**Snow v. Socony Vacuum Oil Co., 46 Abs, 317** (Court of Appeals of Cuyahoga County, 1946): "A lot owner may not enforce restrictions against another where the latter had no notice of a general plan of improvement of the allotment to be imposed on all purchasers therein, there being no refer-

ence to restrictions on the recorded plat of such allotment, and in the absence of any covenant in any allotment deed that the sales of lots would be made subject to like restrictions which would operate for the benefit of all such lot owners."

The Court again follows the cases above noted, **Kiley v. Hall, 96 Oh St, 374; Hayslett v. Shell Petroleum Corp., 38 Oh Ap, 164;** and **Lopartkovich v. Rieger, 66 Oh Ap, 332, 20 O. O. 167.**

A case of considerable interest on the subjects of (1) the enforceability of restrictions by persons other than the party for whose benefit they were imposed, and (2) of the right to enforce after the interests of the original beneficiary are exhausted, is that of **Taylor v. Summit Post No. 19 American Legion, et al, 60 Oh Ap, 201, 13 O. O. 472.**

"1. Where there is no general plan as to a restricted use of property in an allotment, and restrictive covenants in a deed are purely personal with a grantor who conveys his interest in the tract and moves to another locality, and no benefit is shown accruing to him by the enforcement of the restriction, or detriment where it is violated, a court of equity will not intervene with its injunctive power to limit the full use of the property conveyed.

2. A restriction upon the use of property will not be inferred, but must be proved as a substantial fact."

One Whitelaw became the owner of property formerly owned by the Casterton family and restricted as follows:

"And subject also to the following restrictions, limitations and reservations which are reserved to and for the benefit of Hattie Casterton, Susan Casterton and Thomas Casterton, widow and devisees of Thomas Casterton, deceased, their heirs, assigns and legal representatives, and also to and for the benefit of any and every present or future owner of any part of the real estate owned by the said Thomas Casterton, deceased, at the time of his death and fronting or abutting on said West Market Street west of said lot of land hereby conveyed, all of which restrictions, limitations and reservations are to be covenants running with the land."

The property later became owned by the Legion and one of Castertons appears to have joined other parties in an effort to enforce the restriction even though he personally owned no property which would be damaged by non observance of the restriction in question. The court said:

"What then is the effect of the reservation 'for the benefit of Hattie Casterton, Susan Casterton and Thomas Casterton, widow and devisees of Thomas Casterton, deceased, their heirs, assigns, and legal representatives.' "

"Nowhere in the record is there any evidence that the benefit of the Whitelaw restriction was ever assigned to any one by the Castertons. There was, at the time the Whitelaw deed was executed and delivered, no general plan for restrictions of which the Whitelaw restriction was a part.

"What right has Thomas Casterton, one of the beneficiaries of the Whitelaw restriction, to enforce it?

"At the time of the Whitelaw deed he was a part owner in the remaining portion of the Casterton estate. It is not alleged or proved that he is now an owner of any property originally affected by such restrictive covenant. It should be noted in connection with this problem that the Castertons, including Thomas, owned property on West Market street, east of the Whitelaw lot as well as west of it.

"Again, we are compelled to bear in mind that at the time Whitelaw purchased his property from the Castertons there was no general plan of restrictions adopted. In fact the Castertons sold other lots without restrictions.

"We know of no case holding, under such circumstances, where the restrictive covenant becomes a purely personal one with the grantor, and no general plan of restriction exists, and the grantor conveys all his interest in the tract affected, and moves away into another locality, and no benefit is shown accruing to him by the enforcement of the restriction or detriment where it is violated, that a court of equity will intervene with injunctive power to limit the full use of the property conveyed.

"Although Thomas Casterton is a plantiff in this case, there is not a scintilla of evidence that any 'benefit' will accrue to him by restraining or limiting the full use of the property of the Legion.

"It is to be noted that the language of the restrictive covenants limits the restriction for the 'benefit' of certain named persons, including the plaintiff and the lot owners west of the Legion lot.

"Before equity will interfere, some equitable ground for its jurisdiction must appear. None has been shown. No injury —not to say irreparable injury—will, as far as the record indicates, ensue."

Another case which certainly must be mentioned is that of **Dixon v. Van Sweringen Co., 121 Oh St, 56.** In this case a subdivision other than the one in the instant case was involved. The report does not detail the physical situation and status but it is fair to say that the situation existing in the instant case did not exist there at all. The case involves issues wholly foreign to those in this case and furnishes little, if any, aid here. The features at issue were three in number:

1. The right reserved by the Van Sweringen Company to petition for street improvements;

2. The right reserved to grant consents for street uses and to set grades and slopes;

3. The right reserved to change or cancel any of the restrictions.

It was claimed that the first two items were against public policy. We have no such issue here and it would seem clear that they are not provisions which could be held invalid or unenforceable on that ground in any event.

As to the third question—the one reserving the right to change or cancel the restrictions—the court said, page 68 and 69:

"The construction to be given should be with reference to the context, and in this instance we think it should be regarded as applicable to the allotment of which (Dixon's) plaintiff in error's lot is a part and to the tract of land subject to the **general building scheme or plan adopted by the original grantor when the same was laid out**." (Emphasis ours.)

The court must have found facts wholly different to those existing in the instant case. That is further evidenced by the court's reference to, and quotations from, the case of **Wallace v. Clifton Land Company, 92 Oh St, 349.** The court stated a principle and asserted it to be recognized in that case. The first two syllabi of that case are conclusive of the fact which must premise the principle.

"**1. Where uniform restrictions are imposed, according to a general plan of allotment, upon all the lots therein, the owner of the allotment covenanting in the deed of conveyance of each separate lot that all sales or leases of other lots in that allotment, similarly located, shall be sold or leased subject to such restrictions,** an owner of any lot or lots in such addition may maintain an action to enjoin the owner of any other lot or lots in that allotment from using the same for purposes other than the uses to which they are restricted.

"2. The owner of other lots in that allotment, or any number of them, may unite in an action against any lot owner, to enforce by injunction the restrictive covenants written into each deed, in pursuance of the general plan of allotment." (Emphasis ours.)

We certainly have no such facts in the instant case. We do not have a general plan; we do not have a proviso that the restrictions in question are to be inserted in other deeds or for the benefit of other owners or parcels; we do not even have uniform restrictions.

In all cases cited in support of a general plan the restrictions have been at least substantially uniform. In this cause

they are very far from being uniform in context or in effect. To discuss all cases cited and examined would lengthen this memorandum to ridiculous limits but it is proper to point to the fact that if the Court be correct in finding that no general plan is involved here, many of the authorities cited are wholly inapplicable because they are premised on the existence of a valid general plan.

An example of the inapplicability of the authorities cited is one, for instance, cited in her brief by defendant Mary Francis, the case being **Huber v. Guglielmi, 29 Oh Ap, 290.** The case is cited on the theory that restrictions contained in deeds of two adjoining lots may be enforced by one owner against the other, but the restriction in the Huber case was on a wholly different basis from that in the Francis deed and claimed to be binding on the lot of the plaintiff. We need only refer to the statement of the court on page 291 as follows:

"Without quoting all that restriction, it is to be observed that it recites that **all lots** in the subdivision should be used exclusively for residence purposes, except certain mentioned lots, and neither lot 28 nor 29 is among the exceptions. So that both deeds carry notice that both these lots are residential lots. Among the particular restrictions that are then applied to residential property is this:

'No building of any kind shall be moved upon said premises and no building shall be constructed upon said premises that shall contain secondhand material, * * * but the said dwelling house shall be placed not more than three feet from the easterly line of said lot.'

* * * (Emphasis above is supplied by the court.)

"Then the court on page 292 discusses the case of **Kiley v. Hall, 96 Oh St, 374, supra,** and says:

"In the covenant now under consideration, however, it is clearly indicated that the restrictions run to **all** lots within certain numbers, and it is clear from a reading of the restrictions, as they appear in each of the deeds of the parties hereto, that both lots 28 and 29 are subject to the restriction which Guglielmi is threatening to violate."

Again, in the same connection, is cited **McGuire v. Caskey, 62 Oh St, 419:** We think that a glance at a statement of this case by the court will make quite clear the fact that it, again, is one entirely foreign to the facts in the instant case. The restriction was imposed upon all lots and it was so stated in the deed. The statement by the Court, page 420 is as follows:

"The said George Worthington, for himself, his heirs and assigns hereby covenanting and agreeing with the said grantors

and their assigns, as well for the use and benefit of any and every other person who shall or may become the owner of or have any title derived immediately or remotely from, through or under Martin Kellogg or said grantors in this deed to any lot of land or any part thereof fronting on said Jennings avenue or lying wholly or in part within fifty feet of said avenue on either side thereof for the use and benefit of said grantors, or their heirs and assigns, and with a view of increasing the beauty of said avenue and enhancing the value of the lots along the same for the purpose of private residence, not to erect or place, or cause, permit or suffer to be erected or placed at any time, or for any purpose on the above granted or bargained premises any building of any name or description whatsoever that any part of the building shall be within fifty feet of the east line of Jennings avenue."

This cannot possibly be authority to support the position of the defendant Francis in this cause.

The matter of merger has been dealt with at great length in this cause. It is claimed that merger is always a matter of intent but it is doubtful if that is quite true. In their answer brief the defendants Evans, Solomon, Francis and Selmin cite among others the case of Muscogee Mfg. Co. v. Eagle & Phoenix Mills, 126 Ga. 218, but it is the Court's opinion that a fair perusal of that case fails to give comfort to those claiming for it here. In their answer brief, page 6, they assert:

"In other words, if the **only person** entitled to enforce the restrictions is the person who owns the lot restricted, the easement is extinguished, absent a contrary intent." (Emphasis the scriveners.)

That is undoubtedly so, and in the case at the bar the Van Sweringen Company became the owner of the plaintiff's lot with restrictions thereon for its own benefit, and without any obligation on its part to insert them in any other deeds and without one word in any deed in this record indicating that the owner of the title conveyed by it had a right to look to those restrictions for his protection.

The defendants also cite Wieghtman v. Kusel, 270 Ill. 520, page 7 of brief, and copy a paragraph from the opinion. This paragraph in and of itself discloses a situation entirely different from the one in the instant case. Part of the paragraph is as follows:

"Galbraith, when he repurchased the lots, was in the same position as any other purchaser in the chain of title, and had no power by his second deed to change the effect of his original deed containing this building restriction, **executed under the general plan and with the purpose of benefitting the other lots.**"

It should be borne in mind in this connection that the company had already changed the restrictions on adjacent lots and very materially changed the character of the neighborhood. We have no general plan in this case so that the authority is not applicable.

A good deal was said too about the change in the character of the neighborhood and it was eloquently urged that in order to defeat the right to enforce restrictive covenants the change in the neighborhood must be very material and in all of the cases cited the change came as a result of the general development, occupancy and use of properties in the neighborhood generally and by acts of persons other than the allotter in the particular controversy; we do not have that situation in this case. The character of the neighborhood was changed by The Van Sweringen Company itself. It plowed a street through lots which it now claims were part of a general plan restricting that side of the street for single, private dwellings only. When doing that deed, as a result of it, it released restrictions from lots that were restricted for its benefit, just as the plaintiff's lot was originally restricted, and when it plowed its street, Cormere, through the private dwelling lots into North Moreland Boulevard, it opened that section in to what was and is an apartment section and placed the plaintiff's lot in dispute in this cause upon a corner of Cormere and Kemper, and in line with existing apartments on Cormere and across the street from occupancy produced by The Van Sweringen Company which is wholly foreign to single private dwellings and upon sublots which originally were restricted to private dwellings in the same manner as the plaintiff's lot was.

It is the judgment of the Court that the answers to the questions presented by the petition of the plaintiff and numbered here as they are there numbered are as follows:

1. No.

2. No.

3. No.

4. None, other than the set-back requirement shown on the recorded plat herein mentioned.

(These answers are not intended to convey the thought that any of the lots in question are released from the set-back restrictions of the recorded plat; these are conceded to be effective.)

The court finds the property of the defendant Francis to be in the same situation as that of the plaintiff's parcel. By pleading it would appear that defendant Solomon seeks also to have his rights set forth, but the court will not adjudicate his rights as to his own properties for the reason that his

sublots are not governed by the same restrictions as those which were originally imposed upon the plaintiff's parcel. His predecessors in title co-operated with The Van Sweringen Company to change the restrictions and his two sublots are now restricted in a different manner and degree from the restrictions which originally were upon his sublots and with a reservation to The Van Sweringen Company of the exclusive benefit of those restrictions and also a right to cancel, modify or change them when in its judgment that becomes a proper and wise course to follow. His covenants are still subject to the judgment of The Van Sweringen Company and there is not before this court any evidence of its desires or judgment in the premises.

An order may be drawn in accordance with the foregoing findings.