**FAIRFAX COMMUNITY ASSN., Plaintiff, v. BOUGHTON et, Defendants.**

Common Pleas Court, Franklin County.

No. 191377. Decided January 7, 1955.

Vorys, Sater, Seymour & Pease, Columbus, for plaintiff.
Ingalls & Jones, Columbus, for defendants.

## OPINION
By LEACH, J.

This cause is now before the Court on plaintiff's application for a temporary injunction and on defendants' oral motion for judgment in their favor on the pleadings. Since the petition is the sole pleading, defendants' motion raises the question of whether the petition states a cause of action.

Plaintiff is a corporation not for profit, its members being the resident property owners of Fairfax Subdivision, Perry Township, Franklin County, Ohio. Defendants are property owners in such subdivision and are in the process of constructing a home on their lot located therein. Plaintiff seeks to enjoin the construction of such building on the ground that defendants' structure would violate certain "building regulations" of the plaintiff and on the ground that the defendants have not obtained the written consent of the plaintiff to such construction, plaintiff alleging that under the provisions of a certain restrictive covenant in defendants' chain of title, and in the chain of title of all other property owners of this subdivision, is a requirement that written consent be obtained of the plaintiff before any structure be commenced, erected or maintained in this subdivision.

It appears that plaintiff was incorporated in 1928 for the purpose among other things, to fix and provide the terms, conditions, covenants, charges, restrictions and regulations upon, under and subject to which the real property and any portions thereof in the subdivision of Fairfax, Perry Township, Franklin County, Ohio should be acquired, held, used, possessed, occupied or disposed of, and to alter, amend, charge, add to, extend, waive or

terminate in whole or in part, any such terms, conditions, covenants, charges, regulations or parts thereof.

After obtaining title to the land now comprising Fairfax Subdivision, plaintiff on July 28th, 1928, sold such subdivision to Fairfax Company. The deed by which such sale was made contained a restrictive covenant which in so far as pertinent to the issues here involved, read as follows: "* * *

"In pursuance of a general plan for the protection and benefit of all the property in said subdivision and of all persons who may now or hereafter become owners of any part of said subdivision and as a part of the consideration for this conveyance, grantee, for itself and its successors and assigns, does hereby covenant with grantor, its successors and assigns, to hold said real estate and each lot herein described upon the following terms and subject to the following conditions, restrictions, agreements, covenants, obligations and charges and fully and punctually to observe, comply with, perform and carry out the same, to-wit:

"1. No dwelling house costing less than $7,500.00 shall be built or maintained on any lot in said subdivision, except that the minimum cost of house erected on Lots Numbers 93 to 107, both inclusive, shall be $5,000.00. No lot or any part thereof shall be used for any other purpose than that of a dwelling place for a single private family and purposes necessarily incidental thereto, **nor shall any building, fence, wall or other structure be commenced, erected or maintained on said premises, nor shall any change, addition to or alteration therein be made which shall affect the outward appearance of the premises, without (in any and every such case) the written consent of Fairfax Community Association and then only in complete accordance with and conformity to the terms and conditions with respect thereto under which such consent is given.** Before consent is given to the construction of any structure on any lot or part thereof the plans, specifications proposed location thereof and the grade of the first floor thereof, shall be first submitted to Fairfax Community Association for its approval. When any such plans, specifications, location and grade have been approved by Fairfax Community Association, a copy thereof as finally approved together with the terms and conditions under which such approval is given, shall be lodged permanently with Fairfax Community Association and thereupon a certificate of consent shall be delivered to the owner. No private garage shall be erected or maintained in connection with any dwelling house, except a private garage attached to or built as a part of such dwelling unless by consent first obtained in writing from Fairfax Community Association and then only on such location and in accordance with such conditions as to cost, material, plan and architecture as shall be specified in such written consent.

"The foregoing provisions shall apply to each lot and part thereof, but shall not prevent the erection and maintenance of dwelling houses or other structures on any lot or part thereof, provided that consent of Fairfax Community Association be first obtained in the manner aforesaid." (Emphasis ours.)

This deed also contained a provision that "Fairfax Community Association expressly reserves the right to annul, waive, change or modify the terms hereof with respect to any lot or part thereof * * *"

Thereafter, plaintiff enacted and amended from time to time certain

"building regulations." A "building committee" also known as the "board of overseers" was elected by the membership of the plaintiff. This committee, consisting of three men, was delegated the duty of checking and either rejecting or approving plans for constructions submitted to it. The by-laws of the plaintiff provide for an appeal to the Board of Trustees, also consisting of three men, by a property owner whose plans are rejected by the "building committee." An appeal is also provided from the Board of Trustees to the full membership.

In April, 1953, by vote of the entire membership of the plaintiff, certain amended "building regulations" were adopted. Among other things, these regulations provided for a minimum inside floor area of one story homes of 1400 square feet.

It appears that defendants purchased their lot in July, 1954. It is clear that they had knowledge of the existence of the restrictive covenants in question and of the fact that they were required to submit building plans to the plaintiff. Defendants engaged the services of one Charles Bowers, a builder. Mr. Bowers submitted a plan to the building committee which called for the erection of a home with less than the floor area required. The building committee approved such plans on condition that certain changes be made including an increase in the floor area of 100 sq. feet by increasing the over-all length by four feet. The evidence clearly discloses that Mr. Bowers, either by direct statement or by inference, led the building committee to believe that the plan had been modified accordingly and after obtaining the necessary building permit from the City of Upper Arlington, began the construction of a home. Thereafter, it was discovered by actual measurement that construction was proceeding in accordance with the plans which called for an inside wall area of less than 1400 sq. feet.

This action was then commenced by the filing of plaintiff's petition on December 11, 1954. A temporary restraining order was issued by the Court the same day and the cause set for hearing on December 15, 1954, on plaintiff's application for a temporary injunction.

At the conclusion of the hearing of December 15, 1954, the temporary restraining order was continued with an increase in the bond from $200.00 to $3000.00. The Court at that time orally announced its finding that the defendants had begun construction with full knowledge of the fact that they were violating the "building regulations" of the plaintiff. Request was made, however, that the matter be briefed as to the enforceability of such "building regulations," in view of the language of the restrictive covenant in question.

It is the claim of the defendants that under the language of the restrictive covenant the sole purpose of submitting plans to the plaintiff for its consent is to see that compliance has been had with the specific requirements of the restrictive covenant as to the cost of the dwelling house and the fact that it will be "for a single private family and purposes necessarily incidental thereto." It appears to be the contention of the defendants (1) that the actual language employed in the restrictive covenant in question cannot be construed as **intending** to give to the plaintiff the authority to disapprove plans for construction except where such plans reveal that the home (a) will cost less than $7,500.00 or (b) will be used for purposes other than that of a dwelling for a single family purpose, and (2) that if the language in question would purport to authorize the plaintiff to disapprove

plans for other reasons, such would be unenforceable as being so vague as to be against public policy and void.

In support of their contention. defendants cite and rely upon a decision of the Court of Appeals of Summit County, a decision of the Hamilton County Common Pleas Court and a decision of the Montgomery County Common Pleas Court; **Exchange Realty Company v. Bird, 16 Abs 391; Finlaw v. Jacobs, 30 O. O. 7** and **Kline v. Colberg, 56 Abs 295.** Plaintiff contends that such cases are distinguishable and that in any event, this Court is bound by the decision of the Supreme Court of Ohio in **Dixon v. The Van Sweringen Company, 121 Oh St 56,** and by the decision of the Court of Appeals of this district in **Smith v. Volk, 85 Oh Ap 327.**

While certain language standing alone in the cases relied on by defendants would indicate a contrary conclusion, we are in agreement with plaintiff that such cases are distinguishable. In any event, we believe we are bound by the holding of the Supreme Court of Ohio in **Dixon v. The Van Sweringen Company** and believe that this view followed by the decisions of the highest appellate courts in other states is the sounder view of the problem presented.

The case of Dixon v. The Van Sweringen Company involved an action to quiet title brought by a property owner in Shaker Heights against the company which had originally owned the entire subdivision and which had placed the restrictive covenant in question into the chain of title of the plaintiff. Plaintiff specifically sought to invalidate three reservations in the covenant, one of which provided that the defendant had "the right to change or cancel any or all of these restrictions, if in its judgment the development or lack of development of adjacent property makes that course necessary or advisable." The Court rejected the claim of plaintiff that such a provision was against public policy and therefore void. We quote from the opinion of Day, J., at page 69:

"Such judgment would have to be exercised reasonably, if the occasion should ever arise, and not in an arbitrary, captious manner, calculated to be obviously injurious to the rights of the lot owners in such allotment; and a court of equity would have power to protect rights affected thereby, if it should appear such authority was wrongfully exercised. We cannot see that the granting of such a right is necessarily against public policy, if parties wish to accept a deed containing such provision. The case of Hisey v. Eastminster Presbyterian Church, 130 Mo. App., 566, 109 S. W., 60, illustrates the power of a court equity to protect a grantee under a deed containing a clause authorizing a grantor to vary restrictions."

The Court concluded that "Until some concrete case arises, showing that public policy has been violated. we see no reason for denying the right of these parties to contract between themselves * * *."

In concluding that a court of equity has the power to protect against an arbitrary or capricious exercise of power to vary restrictions, it appears that the Supreme Court necessarily concluded that a provision in a restrictive covenant purporting to give to one party unlimited power to vary such restrictions is not void as against public policy. Instead it appears that the property owner is fully protected by the protecting cloak of a Court of Equity if such power is attempted to be exercised in an arbitrary or capricious manner.

In the instant case, so far as it has proceeded to date, with the filing

of the petition and testimony taken upon the issue of granting a temporary injunction, the issue whether the power purported vested in the plaintiff has been exercised in an arbitrary or capricious manner is not presented. The issue presented at this stage of the proceedings is simply one of whether the plaintiff has any authority to refuse to approve defendants' building plans for reasons other than the $7500.00 cost requirement and the requirement of use as a single family private dwelling.

Where a restrictive covenant grants broad discretionary authority to approve or disapprove construction and maintenance of buildings. we believe it fundamental that such authority must be exercised within reasonable limits and within the framework of the purpose of such covenant. Here the purpose of the covenant "a general plan for the protection and benefit of all the property in such subdivision and of all persons who may now or hereafter become owners of any part of said subdivision" is spelled out in the covenant itself. The principle that a "general plan" must exist in order to avoid the necessary conclusion that otherwise the power could be exercised arbitrarily or capriciously, is well recognized. This does not mean, however, as we believe defendants contend. that the entire plan must be spelled out in specific detail in the covenant itself and that the covenant cannot delegate the power to enact or amend specific requirements to implement the "general plan."

With these principles in mind, the cases of Exchange Realty Company v. Bird, Finlaw v. Jacobs and Kline v. Colberg become reconcilable with the holding of the Supreme Court in Dixon v. The Van Sweringen Company.

We believe that such principle was recognized by the Court in the Exchange Realty Company case. We quote from the opinion of Funk, J., at page 394:

"While such a restrictive covenant in a deed requiring the submission to and approval by the grantor of all plans for the erection of a house is held to be a valid and enforceable covenant—131 Atl. 446 (Md.), Jones v. N. W. Real Est. Co.; 106 Atl. 310 (Pa.), Harmon v. Burow, 36 L. R. A 393 (Md.), Peabody Heights Co. v. Willson, 158 N. E. 761 (Mass.), Parsons v. Duryea—it will be noted that such a covenant is always used in connection with some general plan or scheme or some other designated or stated restriction within which such approval may operate, **or** that the covenant regulates the scope of the approval; and the same is true in the instant case, as the restriction reads 'no such house.' The word 'such' presents the question, What house? and the answer evidently is that said word means the kind of a house provided for in the other designated restrictions. We find no decision or test to the effect that a covenant requiring the submission to and approval of plans by the grantor, standing alone, without any other restriction, is enforceable." (Emphasis added.)

As we interpret the Exchange Realty Company case, the court found no "general plan" to exist and also predicated much of its opinion on the peculiar language of the covenant in stating that "no such house" should be erected until plans were approved. We agree with the discussion of the Exchange Realty Company case by the California Supreme Court in the case of Hannula v. Hacienda Home Inc., 34 Cal. 2d, 442; 19 A. L. R. 1268. In the Hannula case, as here, the issue as to whether the act of rejecting plans had been done reasonably or unreasonably, was not presented. As here, the single issue was whether a restrictive covenant purporting

to delegate "unlimited" power to approve or disapprove plans was void per se as being against public policy. The court discussed the Exchange Realty Company case in some detail and concluded that the opinion was predicated basically upon the use of the language "such house" and on the apparent belief of the court that the action of the Realty Company in question was arbitrary. It concluded that the broad language of the opinion "to the effect that standing alone the respective covenant requiring the approval of plans would leave the purchaser subject to the mere whim of the seller and would therefore be too indefinite to be enforced, ignores the decisions cited which hold that the power to approve plans and site must not be exercised capriciously or arbitrarily."

In so concluding, the California Supreme Court has restated the basic principle already determined by our Supreme Court in the case of Dixon v. The Van Sweringen Company.

From an examination of the opinion in the case of Finlaw v Jacobs, it likewise appears that no "general plan" was found. In the case of Kline v. Colberg, Crawford, J., specifically discussed the question of whether a "general scheme or plan" existed and concluded at page 300:

"What then was the general scheme or plan? Simply Colonel Grigg's taste and judgment in a multitude of individual cases. However excellent his decisions may have been, they could hardly create a demonstrable general plan. And such result could scarcely be attained unless he were actually to design or prescribe the design for each house. The only thing that was concretely uniform was the practice of submission and approval of plans as specified in the deeds and agreement."

The Court of Appeals of this district in Smith v. Volk held that restrictions which permit the erection of a single residence which is required to conform to adjoining property with respect to setback and exterior design, and which require the plans to be prepared by an architect of known ability and submitted to the alloter for his approval are sufficient to put a purchaser on inquiry regarding a building plan and scheme for improvement of the entire tract. While the basic question there involved was whether there was mutuality in the restrictions by corresponding covenants in the deed of each grantee, it does appear that the Court gave at least tacit approval to a covenant delegating broad power of approval or rejection of plans.

As contrasted with the language of the covenant under consideration in the Exchange Realty Company case, it of course will be noted that the language here under consideration forbids any building, fence, wall or other structure being commenced, erected or maintained without the written consent of the plaintiff and also forbids any change, addition to or alteration therein which shall affect the outward appearances of the premises. To construe the requirement of approval as being limited to an approval relative to the $7,500 minimum cost and relative to its use as a single family dwelling, would give absolutely no force and effect to the requirement that approval be had as to the erection of a fence, the erection of a wall and as to any change, addition to or alteration affecting the outward appearance of the premises. We conclude therefore that the restrictive covenant in question was intended to grant broad discretionary authority to the plaintiff. As heretofore stated, such authority must be exercised reasonably and not arbitrarily or capriciously and in accordance with a

"general plan." The evidence and the pleadings indicate that such a "general plan" exists. As heretofore stated, the issue of whether the application of this "general plan" to the building of defendants is so unreasonable as to be arbitrary and capricious, is not involved at this time.

Defendants' oral motion for judgment in their favor on the pleadings may be overruled. Plaintiff's application for a temporary injunction is granted. The bond in the amount of $3000.00 heretofore posted, under the temporary restraining order may be continued as the bond on this temporary injunction. An entry may be prepared accordingly.