CARRANOR WOODS PROPERTY OWNERS' ASSOCIATION, APPELLEE, *v.* DRISCOLL ET AL., APPELLANTS.

(No. 5021—Decided July 15, 1957.)

*Mr. James M. Evans,* for appellee.
*Mr. Wm. D. Driscoll* and *Mr. Ed. Hagerty,* for appellants.

FESS, J. Appellants having failed to perfect their appeal on questions of law and fact, this appeal was reduced to an appeal on questions of law from a finding and judgment of the Common Pleas Court enjoining appellants from the construction of a dwelling house having an attached garage with its entrance facing the street.

This is the second occasion that this controversy has appeared in this court. In an unreported opinion rendered November 28, 1955, this court affirmed a judgment of the Common Pleas Court entered in *Driscoll* v. *Bailey Development Company,* in favor of the defendant. The petition sought a declaration of rights with respect to certain building restrictions. The **judgment** below in favor of the defendant, without making **a**

declaration of rights of the parties, was affirmed by this court because of the failure of the plaintiff to submit definite plans and specifications to the defendant for approval prior to the commencement of the action which would thereby enable the court to "terminate the uncertainty or controversy" as contemplated by Section 2721.07, Revised Code. In our opinion, what was decided or said in our opinion in that case has no bearing upon the question to be determined upon this appeal.

On March 8, 1954, the Bailey Development Company, predecessor of the plaintiff corporation, duly recorded a declaration of restrictions relating to an unimproved subdivision comprising 41 lots. The subdivision includes a continuous circular road extending from River Road in a northerly direction through the subdivision (known as Sandalwood Drive) making a circular bend and returning to the River Road (known as Tamarack Drive). There is a lot-deep dead-end road known as Spruce Lane running northerly from Tamarack Drive.

After describing the allotment, the declaration of restrictions recites that the Bailey Development Company desires to establish for its own benefit and for the benefit of all future owners or occupants of all or any part of Carranor Woods, certain easements and rights in, over and to Carranor Woods, and certain restrictions with respect to the use thereof. Thereafter a number of reservations and restrictions are set forth relating to porches, alteration of structures, fences, walls and hedges, erection upon public utility easements, commercial use, animals, exposure of washing, rubbish, debris and garbage, relocation of roadway leading to garage, subdivision of less than whole of any lot, and variance of plans and specifications approved by the developer.

The restrictions pertinent to a decision herein are:

"Section 1. No building, fence, wall, sign or other structure shall be erected or maintained on said lots unless erected or maintained in accordance with plans and specifications showing the nature, kind, shape, type, material, color scheme and location of such structure, which shall be submitted to Bailey Development Company, its successors, or assigns, and approval thereof endorsed thereon in writing.

"Section 2. No building other than a single family dwelling

house, including an attached garage for private use conforming architecturally to the residence, and attached, shall be erected upon any of said lots, nor shall any house constructed on any of said lots be used for any purpose other than a single family dwelling house, nor any garage for other than private use.''

On April 15, 1954, the defendant and his wife submitted an offer to purchase an eighty-foot lot fronting on Tamarack Drive which was accepted by the Bailey Development Company. On September 11, 1954, such company executed and delivered its warranty deed to defendants subject to *restrictions of record.*

It is admitted by the pleadings that when defendants agreed to purchase their lot, construction of but three residences in the subdivision had been commenced. At the time of trial, there were only two unimproved lots, in addition to that of defendants, one on Sandalwood Drive and the other on River Road.

On October 11, 1954, defendant submitted conditional plans and specifications for their residence to the Bailey Development Company, which were rejected primarily on the ground that the entrance to the garage faced Tamarack Drive. For aught the record shows, this was the first time that defendants were apprised that Bailey required defendants' garage to be built with its entrance on the side or the rear of their residence.

After termination of the declaratory judgment action, two or three additional plans were submitted to Bailey or the plaintiff, which were likewise rejected. The final plan submitted was formally rejected by the plaintiff on October 26, 1956, on the sole ground that it contemplated a garage with its entrance facing the street. In all other respects, the plan was approved.

Thereafter, defendants entered into a contract with the defendant construction company for the construction of their residence, in accordance with the plans and specifications disapproved by the plaintiff, and on December 10, 1956, construction of defendants' proposed dwelling was commenced. On December 31, 1956, the instant action was commenced and temporary injunction issued enjoining the defendants from proceeding with such construction until plans therefor should be approved in writing by plaintiff.

It is established that where an owner of land has adopted a general building scheme or plan for the development of a tract

of property, designed to make it more attractive for residential purposes by reason of certain restrictive agreements to be imposed upon each of the separate lots sold, embodying the same in each deed, such agreements will generally be upheld, provided the same are not against public policy. *Dixon* v. *Van Sweringen Co.*, 121 Ohio St., 56, 166 N. E., 887; *Smith* v. *Volk*, 85 Ohio App., 347, 86 N. E. (2d), 30.[1]

And a grantee in a conveyance of land is deemed to have notice of restrictive covenants when such covenants have been inserted in his deed, or where it clearly appears that a plan of uniform development of an allotment with restrictive covenants had been adopted by the filing and recording of a declaration of reservations and restrictions incident to the platting, accompanied by substantially uniform compliance with such restrictions or standards. *Grant* v. *Hickok Oil Co.*, 84 Ohio App., 509, 87 N. E. (2d), 708. And a court of equity will enforce the observance of valid restrictive covenants as to the use of property when the grantee has notice of such covenants. *Grant* v. *Hickok Oil Co., supra; Smith* v. *Volk, supra; Arthur* v. *Bender*, 90 Ohio App., 187, 101 N. E. (2d), 140. But notice, actual or constructive, of such restrictive covenants as well as substantially uniform compliance therewith is essential for enforcement. *Kiley* v. *Hall*, 96 Ohio St., 374, 117 N. E., 359, L. R. A. 1918B, 961; *Adams* v. *Donovan*, 97 Ohio St., 83, 119 N. E., 252; *Davidson* v. *Buckeye Homes, Inc.*, 37 Ohio Law Abs., 570, 11 Ohio Supp., 54; *Hayslett* v. *Shell Petroleum Corp.*, 38 Ohio App., 164, 175 N. E., 888; *Lopartkovich* v. *Rieger*, 66 Ohio App., 332, 33 N. E. (2d),

[1]The weight of authority supports the rule that a reservation by the common grantor of a general power to dispense with the restrictions on particular lots negatives the purpose of uniform development from which the mutuality of right among lot owners in a platted subdivision is deemed to arise. Accordingly, where such a power is reserved, one lot owner can not enforce the restrictions as against another lot owner even though the dispensing power of the common grantor has not been exercised. 19 A. L. R. (2d), 1282. In the *VanSweringen case*, the action was against the original grantor, who retained one lot in the allotment and had not exercised the power of modification reserved. In the instant case the plaintiff succeeded to all the rights of the Bailey Development Company in accordance with the declaration of restrictions, and thereby is competent to bring the action to enforce compliance.

1014; *Snow* v. *Socony Vacuum Oil Co.,* 46 Ohio Law Abs., 317, 69 N. E. (2d), 200; Cf. *Copelin* v. *Morris,* 63 Ohio Law Abs., 193, 101 N. E. (2d), 18. In the instant case the defendants had notice that no structure should be erected on the premises without the prior approval in writing of the plans and specifications therefor by the Bailey Development Company, but had no notice, actual or constructive, that they would be required to have the entrance to their garage at the side or to the rear of their dwelling.

The question here presented has two aspects. First, is the broad general reservation of the right to reject plans and specifications valid? Second, if valid, was there adopted and enforced a uniform general plan with respect to the location of garages in the allotment?

What is said in *Dixon* v. *Van Sweringen Co., supra,* lends countenance to the contention that the developer may reserve broad powers of modifying or even cancelling restrictions of record and that in the event of arbitrary exercise of such power the lot owner may be accorded equitable relief against imposition. However, in the *Dixon case,* the reservation was contingent upon the grantor exercising its judgment in determining whether the development or lack of development of adjacent property made such course necessary or advisable. Thus, at least some standard or criterion was recited for the exercise of the power reserved.[2]

The declaration of restrictions in the instant case provides that building plans shall be submitted to the Bailey Develop-

---

[2] In *Smith* v. *Volk, supra,* the restrictions uniformly incorporated in the deeds provided that all dwellings should conform to adjoining property as to setback and exterior design as practicable and all plans for such residences should be prepared by architects of known ability and submitted to the grantor for approval. Cf. *Parsons* v. *Duryea,* 261 Mass., 314, 158 N. E., 761, cited in *Exchange Realty Co.* v. *Bird,* 16 Ohio Law Abs., 391, enforcing a reservation in the grantors permitting them to refuse approval of plans which were not suitable or desirable for esthetic or other reasons, taking into "consideration the suitability of the proposed building or other structure and of the materials of which it is to be built to the site upon which it is proposed to erect the same, the harmony thereof with the surroundings and the effect of the building or other structure, as planned, on the outlook from the adjacent or neighboring property."

ment Company "and approval thereof endorsed thereon in writing," but no criterion, standard formula or limitation is provided with respect to such approval.

Restrictive covenants are to be construed strictly against the restrictions and in favor of the free use of property. *Hunt* v. *Held*, 90 Ohio St., 280, 107 N. E., 765, L. R. A. 1915D, 543; *Hitz* v. *Flower*, 104 Ohio St., 47, 135 N. E., 450; *Cleveland Baptist Assn.* v. *Scovil*, 107 Ohio St., 67, 140 N. E., 647; *Loblaw, Inc.*, v. *Warren Plaza, Inc.*, 163 Ohio St., 581; *Szilvasy* v. *Saviers*, 70 Ohio App., 34, 44 N. E. (2d), 732. And a particular restriction should be construed *in pari materia* with other restrictions.

Where it is contended that a particular restriction is invalid rather than declare it invalid, that construction will be adopted which will remove the invalidity and give effect to enforcing the restriction as a whole. We are therefore inclined to follow the reasoning of Funk, J., in *Exchange Realty Co.* v. *Bird*, 16 Ohio Law Abs., 391, that in order that a restrictive covenant requiring submission to and approval by the grantor of plans for the erection of a dwelling may be valid and enforcible, such covenant must be used (1) in connection with some general plan or scheme, or (2) some other designated or stated restriction within which such approval may operate, or (3) the covenant must regulate the scope of the approval. Cf. 15 Ohio Jurisprudence (2d), 103, 105. The restriction in the instant case, standing alone and devoid of any general plan or scheme is unlimited in its scope and would leave a purchaser of a lot subject to the whim of the developer and would permit the latter to require a structure of any kind to be erected. *Finlaw* v. *Jacobs* (C. P.), 30 Ohio Opinions, 7; *Kline* v. *Colbert* (C. P.), 56 Ohio Law Abs., 295, 91 N. E. (2d), 299. Contra: *Fairfax Community Assn.* v. *Boughton* (C. P.), 70 Ohio Law Abs., 178, 127 N. E. (2d), 641.[3]

It is therefore concluded that the restriction herein is valid but that it does not add any new or different restrictions than

---

[3]See, also, *Kirkley* v. *Seipelt*, 212 Md., 127, 128 A. (2d), 430, holding a covenant requiring approval of the grantor valid but that any refusal to approve must be based upon a reason bearing some relation to other buildings or a general plan of development and such refusal would have to be a reasonable determination in good faith, and not high-handed, whimsical or cap-

those set forth in the recorded declaration of restrictions, and only requires plans to be submitted for approval to assure that such plans conform to the restrictions of record. *Exchange Realty Co.* v. *Bird, supra.*

In the instant case, Section 2 of the declaration only requires that an attached garage shall conform architecturally to the residence, and makes no reference to the location of entrance to such garage. Plaintiff asserts that there was a general plan or scheme contemplating the erection of garages on Tamarack Drive with entrances to the side or rear of the residences. But for aught the evidence discloses, such plan was merely in the mind of the developer, and the defendants had no knowledge or notice of such requirement until after they had purchased their lot.'

No such general plan is presented. The restrictions of record apply to the allotment as a whole. On Sandalwood Drive, nine dwellings have garages with entrances facing the street, seven to the rear and one at the side. On the River Road, two dwellings have garages with entrances facing the street, and two have side garages with entrances facing Tamarack Drive, and one has a side garage with the entrance facing Sandalwood. The fourteen dwelling houses on Tamarack Drive have their garages with entrances at the side or rear. The president of the plaintiff testified that he was the first person who commenced construction of a dwelling in the allotment,

---

tious in manner, referring to *Fairfax Community Assn.* v. *Boughton, supra*; *Hannula* v. *Hacienda Homes, Inc.*, 34 Cal. (2d), 442, 211 P. (2d), 302; distinguishing *Exchange Realty Co.* v. *Bird*, 16 Ohio Law Abs., 391; *Parsons* v. *Duryea*, 261 Mass., 314, 158 N. E., 761; *Harmon* v. *Burow*, 263 Pa., 188, 106 A., 310; *West Bloomfield Co.* v. *Haddock*, 326 Mich., 601, 40 N. W. (2d), 738. For comprehensive annotation with respect to validity of restrictions requiring approval of plans, see 19 A. L. R. (2d), 1275.

'In this respect the instant case is to be distinguished from *Smith* v *Volk*, 85 Ohio App., 347, wherein the defendants, prior to their purchase of the property, had actual as well as constructive notice of the restrictions. In *Smith* v. *Volk*, the recorded plat did not contain restrictions, but it was shown by clear and convincing proof that from the beginning the common grantor adopted a general building plan and scheme for the development of the entire tract and imposed uniform restrictions on the lots sold, including the acreage conveyed to the defendants' predecessor in title.

that at his request the Bailey Development Company prepared plans with the entrance of the garage facing Tamarack Drive, but after construction was commenced, at Bailey's request, the garage was placed to the rear of the dwelling.

As above indicated, there was no uniform plan adopted or followed with respect to the location of garages in the allotment. After the restrictions were recorded, the Bailey Development Company arbitrarily decided that no garage upon Tamarack Drive should face the street.[5]

In the absence of knowledge or notice of such decision, the defendants became bound only by the restrictions of record.

Before concluding, we are prone to quote from Judge Crawford's opinion in *Kline* v. *Colbert, supra,* that the defendants might care to ponder "that a privilege so eagerly sought today may turn to bitterness tomorrow; and that while occupying a house they must also dwell in a neighborhood."

It is therefore concluded that the plaintiff herein is not entitled to equitable relief as a matter of law. The judgment is reversed and the cause remanded to the Common Pleas court for execution for costs.

*Judgment reversed.*

DEEDS and SMITH, JJ., concur.

TIPTON, ADMX., APPELLANT, *v.* DAY, APPELLEE.

---

[5]Whether the grantor may decline to approve plans for "aesthetic reasons" alone, is open to question but is unnecessary to decide herein since the defendants had no knowledge of that which may have been in the mind of the grantor.